### FRED H. TIBBETTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2479. Promulgated April 14, 1927.

1. Petitioner, a civil engineer, performed services for political subdivisions of the State of California under contracts fixing his compensation at a percentage of the cost of construction and maintenance of the projects in connection with which his services were engaged. *Held,* the petitioner was not an officer or employee of the State or its political subdivisions within the meaning of section 1211 of the Revenue Act of 1926.

2. It not being shown that an income tax on the compensation received under the contracts would impair petitioner's ability to discharge his obligations to the State or that the tax would interfere with the ability of the State to secure his services, *held,* that the amounts received for services rendered under the contracts are not exempt from Federal income tax.

*H. J. Hankins, Esq.,* for the petitioner.
*D. D. Shepard, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income tax for the calendar years 1918, 1919, and 1920, in the respective amounts of $1,449.75, $1,150.65, and $2,730.74, a total of $5,331.14.

The only question involved is whether the petitioner is subject to tax on the amounts received for services rendered to California irrigation and reclamation districts, which, for the purposes of this appeal the respondent admits are political subdivisions of the State of California.

### FINDINGS OF FACT.

The petitioner is a civil engineer and in the years here involved was employed by certain political subdivisions of the State of California which are as follows, with the length of his employment in each case:

|  | Years. |
|---|---|
| Knights Landing River Drainage District | 14 |
| Sacramento River West Side Levee District | 11 |
| Reclamation District No. 108 | 11 |
| Byron Bethany Irrigation District | 2 |
| Grenada Irrigation District | 2 |
| Glenn-Colusa Irrigation District | 8 |

In the cases of the Byron Bethany and Grenada Irrigation Districts the petitioner's employment ceased upon completion of construction. In the other cases he is still employed as engineer for the several districts.

The employment of the petitioner by the several districts was under resolutions of the boards of directors or trustees, as the case might be, accepting the terms submitted by the petitioner. The method and terms of his employment were substantially the same in all cases. A typical example is that of Reclamation District No. 108, which is here set forth:

RESOLUTION adopted by the Trustees of Reclamation District No. 108 on March 2nd, 1917.

MARCH 1st, 1917.

Honorable BOARD OF TRUSTEES,
Reclamation District No. 108,
San Francisco, California.
GENTLEMEN :

Pursuant to your request, the writer herewith submits terms in connection with the engineering work of Reclamation District No. 108. This proposition to apply to all estimates rendered subsequent to the writers' appointment as Engineer of your District on March 2, 1917.

Charges for engineering services to be as follows:

A. The actual cost of all employees on your work, both in the field and in the office, together with all necessary and proper traveling, office and incidental expenses necessary for the proper and expeditious conduct of the work contemplated and ordered by the Board of Trustees, or other officials of the District. This work will include all necessary topographic and other surveys, all necessary office work for the preparation of plans and estimates of construction, right of way plats, detailed drawings for structures, or other accessories, contracts, specifications, and supervision of construction of all work performed by your district; also monthly estimates and summaries of con-

struction work and any other reports requested. The writer would also agree to be in attendance at the meetings of the Board of Trustees when requested, and to furnish all services requested in connection with any litigation or legal work required by your attorneys.

B—In addition to the above, a charge of 2% of the actual construction cost of all work performed by your District. The above charges to include all overhead expenses and services of the writer.

The said percentage of 2% to be payable at the time monthly estimates are made during the progress of construction work. The said actual cost of . field and office work, together with traveling, office and incidental expenses to be payable in cash within thirty days after the rendition of monthly bills.

The approval by resolution by your Honorable Board of Trustees of the above terms will be deemed a sufficient contract by me for the performance of the work indicated.

Respectfully submitted,

FRED H. TIBBETTS,
Engineer Reclamation Dist. No. 108.
HAVILAND & TIBBETTS.

Adopted March 2, 1917.

Thereupon the following resolution was presented by Trustee Browning, seconded by Trustee Balsdon and unanimously adopted, to-wit:

RESOLVED, that Engineer Fred H. Tibbetts be and he is hereby employed as Engineer of Reclamation District No. 108 upon the terms and conditions as submitted in his letter just read, which said letter is to be spread upon the minutes of this meeting, and adopted as a part of this resolution.

The rate of compensation was not fixed by law but was entirely a matter of contract between the petitioner and the boards of directors or trustees. The petitioner took no oath of office. His duties were performed under the general direction of the boards and he was subject to discharge by them at any time.

When any of the boards by whom the petitioner was employed desired his services they would so advise him, stating the work to be performed. The petitioner would then make surveys and prepare drawings and estimates of the work, which were submitted to the boards for their approval or modification. After agreement upon a plan the actual work of construction was contracted for, usually by means of advertising for bids. The duties of the petitioner then consisted of regular inspections of the construction, the supervision of any surveys necessary, and making periodical progress reports to the boards. After completion of the construction work, his duties, especially during the winter season, consisted of supervision of the maintenance and operation of the works, making periodical inspections of the works on the ground, computations and estimates of their efficiency and capacity, and rendering periodical reports to the boards or managers of the works. At times he attended meetings of the boards. All of the work of the petitioner was subject to inspection and acceptance by the boards.

The petitioner maintained his own office. A part of the petitioner's duties were performed by him personally and part by his employees. He usually submitted monthly bills to the districts but at times when the amounts due were small they were allowed to accumulate for several months. In some cases the district boards held meetings only once in a period of two or three months and in these cases the petitioner was paid at irregular intervals.

His compensation of 2 per cent was based on the cost to the districts of the construction and maintenance of the irrigation and reclamation works.

Only a portion of the petitioner's time was devoted to work for the irrigation and reclamation districts. No restriction was placed on his concurrent employment by other persons or firms and he was free to accept and did accept employment from others during the years here involved.

The petitioner reported as nontaxable income for the years involved the amounts received from the reclamation and irrigation districts by which he was employed.

OPINION.

ARUNDELL: The petitioner contends that he was an officer or employee of the political subdivisions of the State of California which are listed in the findings of fact, and that the compensation received from them is not subject to Federal taxation. The Commissioner admits that the organizations which the petitioner served are political subdivisions of the State but denied that the petitioner was an officer or employee of them.

The Knight's Landing Ridge Drainage District was created by an act of the state legislature (Stats. 1913, p. 109; amended, Stats. 1915, p. 546; Stats. 1917, p. 277), providing in part as follows:

Sect. 4. The Board of Drainage Commissioners shall elect one of their members as President and shall elect a secretary, who may or may not be a member of said Board, and an engineer who shall not be a member of said Board, and employ such other persons as may be necessary to assist and advise the Board * * *.

Sect. 5. The Board of Drainage Commissioners shall have power to adopt By-Laws not in conflict with general laws; to appoint an executive committee with such general powers as shall not be in conflict with general laws; to employ engineers * * *.

The Sacramento River West Side Levee District was created by an act of the state legislature (Stats. 1915, p. 516; amended, Stats. 1917, p. 1211) which provided in part:

Sect. 2. The officers of said District shall consist of a Board of five levee commissioners, who shall hold office for the term of four years * * *.

Sect. 4. The Board of levee commissioners shall elect one of their members as president, and shall elect a secretary who may or may not be a member of said board, and an engineer who shall not be a member of said board, and employ such other persons as may be necessary to assist and advise the board.

Sect. 5. The Board of levee commissioners shall have power to adopt by-laws * * *; to employ engineers and others to survey, plan, locate and estimate the costs of work * * *; also to construct, reconstruct and repair and maintain and protect such levees * * *.

Reclamation District No. 108 was organized under the Reclamation Laws of the State of California (secs. 3446–3493, Deering's Pol. Code, 1923). It is provided in these laws, under section 3454, in part as follows:

§3454. Powers of Trustees. A. Said board of trustees shall have powers and duties as follows, to wit:

     *        *        *        *        *        *

(6) Engineers, etc. To employ engineers and others to survey, plan, locate and report on the works necessary for the reclamation of the lands of the district, and estimate the cost thereof; thereafter, at any time, modify or change such original plan or plans, or adopt new, supplemental, or additional plan or plans, when, in its judgment, the same shall become necessary.

     *        *        *        *        *        *        *

(9) Labor and machinery. To employ such labor * * * and to make and enter into such contracts and agreements as they shall deem necessary in order to accomplish the proper construction, maintenance, repair or operation of the works of reclamation of the said district.

The Byron-Bethany Irrigation District, the Grenada Irrigation District, and the Glenn-Colusa Irrigation District were organized under "An act to provide for the organization and government of irrigation districts * * *." (Stats. 1897, p. 254; Act 3854, Calif. Gen. Laws, Deering, 1923.) This act provides in part as follows:

§15. Powers of directors. The board of directors shall have the power and it shall be their duty to manage and conduct the business and affairs of the district; make and execute all necessary contracts; employ and appoint such agents, officers and employees as may be required, and prescribe their duties.

If the amounts received by the petitioner from the irrigation and reclamation districts were received as compensation for personal services as an officer or employee, such amounts may not be taxed in view of the provisions of section 1211 of the Revenue Act of 1926, which provides as follows:

Sec. 1211. Any taxes imposed by the Revenue Act of 1924 or prior revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

The facts in this case are close to those in *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, as will be seen from the following extracts from the court's opinion:

All of the items of income were received by the taxpayers as compensation for their services as consulting engineers under contracts with states or municipalities, or water or sewage districts created by state statute. In each case the service was rendered in connection with a particular project for water supply or sewage disposal, and the compensation was paid in some instances on an annual basis, in others on a monthly or daily basis, and in still others on the basis of a gross sum for the whole service.

\* \* \* \* \* \* \*

\* \* \* They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character; some were of brief duration and some from year to year, others for the duration of the particular work undertaken. Their duties were prescribed by their contracts and it does not appear to what extent, if at all, they were defined or prescribed by statute.

The petitioner took pains to point out that his duties with the reclamation and irrigation districts were not those of consulting engineer. Whether his duties ended with consultation or extended over a wider field by following up and supervising the work after the consulting and planning features were disposed of, is not determinative of the question of whether the petitioner was an officer or employee of the political subdivision.

"An office is a public station, or employment, conferred by the appointment of government. The term embraces ideas of tenure, duration, emolument, and duties." *United States* v. *Hartwell*, 6 Wall. 385, 393. This definition of the term "office" it is said in *United States* v. *Germaine*, 99 U. S. 508, 511, "embraces the ideas of tenure, duration, emolument, and duties, and that the latter were continuing and permanent, not occasional or temporary."

In the present case the petitioner took no oath of office, was free to accept any other concurrent employment and did in fact accept such employment. His status was prescribed by contract and not by statute. So far as we are advised these contracts, although entered into by authority of law, neither could nor did operate to create an office or to give to petitioner the status of an officer. *Metcalf & Eddy* v. *Mitchell, supra.*

Petitioner's main argument was to the effect that he was an employee of the political subdivisions enumerated above.

A similar question was considered in the *Metcalf & Eddy* case and it was found there that the plaintiffs were independent contractors rather than employees, the opinion on this point reading as follows:

\* \* \* The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging

them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea of that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. *Chicago, Rock Island & Pacific Ry. Co.* v. *Bond,* 240 U. S. 449, 456; *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 227; and see *Casement* v. *Brown,* 148 U. S. 615; *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 518, 523.

In the case of *Casement* v. *Brown,* cited above, one of the questions involved was whether the relation of defendants to certain railroad companies was that of employees or independent contractors. The court held that they were independent contractors, saying in part:

They did not agree to enter generally into the service of the companies, and do whatsoever their employers called upon them to do, but they contracted for only a specific work. The functions of the engineers [of the railroad companies] were to see that they complied with this contract—" only this, and nothing more." They were to see that the thing produced and the result obtained were such as the contract provided for.

The case of *Vane* v. *Newcombe,* 132 U. S. 220, involved the question whether or not plaintiff was an employee of a corporation within the terms of a state statute giving employees prior liens for labor performed. In the opinion the court says in part:

We think the distinction pointed out by the Circuit Court is a sound one, namely, that to be an employé within the meaning of the statute Vane " must have been a servant, bound in some degree at least to the duties of a servant, and not," as he was, " a mere contractor, bound only to produce or cause to be produced a certain result,—a result of labor, to be sure,—but free to dispose of his own time and personal efforts according to his pleasure, without responsibility to the other party."

These cases cover the question here presented. The petitioner did not enter generally into the employment of the irrigation and reclamation districts; he was employed only for the purposes specified in his contracts. The contracts contained nothing which reserved to the officials of the districts any control or right of control which, as set forth in the quotation from *Metcalf & Eddy* v. *Mitchell* above, " characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor."

A case in point on the question here involved is the *Appeal of Robert G. Gordon,* 5 B. T. A. 1047, wherein the petitioner and two others where employed under a contract entered into with the Governor of Kentucky as special counsel to represent that Commonwealth in the collection of inheritance taxes in a specific case. The compensation of the petitioner and his associates was fixed by the contract at a flat sum plus a percentage of the taxes collected. In that case we held that the petitioner was neither an officer nor employee of the

Commonwealth, quoting from *Louisville, Evansville & St. Louis R. R. Co.* v. *Wilson,* 138 U. S. 501, as follows:

The terms "officers" and "employés" both, alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employé. They imply continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual, retained for a single suit, is not his employé. It is true, he has engaged to render services; but his engagement is rather that of a contractor than that of an employé.

In the *Appeal of Emma B. Brunner, Executrix,* 5 B. T. A. 1135, the decedent Brunner was an architect and had been engaged by the Commonwealth of Pennsylvania and the municipalities of Albany and New York, N. Y., in connection with the construction and alteration of public buildings and the construction of a bridge. His compensation was fixed in some cases on the basis of specified percentages of construction costs and in others at a flat annual sum. We held that that case, in so far as those contracts were concerned, came within the decision in *Metcalf & Eddy* v. *Mitchell,* saying in part:

The decedent was not a part of the regular governmental force of the Commonwealth of Pennsylvania or the municipalities of New York and Albany. He was an independent contractor and his rights, duties, and compensation were fixed by the contracts.

The present case falls within this line of decisions and we are of the opinion that the petitioner must be regarded as an independent contractor rather than an employee of the political subdivisions that engaged his services.

There is still the question of whether the imposition of a tax on the petitioner's compensation for services rendered under the contracts amounts to an interference with the exercise of governmental functions by the State or its political subdivisions.

This question too was passed on in the *Metcalf & Eddy* case, in the following language:

* * * We do not suggest that there may not be interferences with such a contract relationship by means other than taxation which are prohibited. *Railroad Co.* v. *Peniston, supra,* at p. 36, recognizes that there may. Nor are we to be understood as laying down any rule that taxation might not affect agencies of this character in such a manner as directly to interfere with the functions of government and thus be held to be void. See *Railroad* v. *Peniston, supra,* page 36; *Farmers Bank* v. *Minnesota, supra,* p. 552; *Choctaw & Gulf Railway Co.* v. *Harrison, supra,* p. 272.

But we do decide that one who is not an officer or employee of a state, does not establish exemption from federal income tax merely by showing that his income was received as compensation for service rendered under a contract with the state; and when we take the next step necessary to a complete disposition of the question, and inquire into the effect of the particular tax, on the functioning of the state government, we do not find that it impairs in any

substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings. Cf. *Central Pacific Railroad* v. *California*, 162 U. S. 92, 126. We therefore conclude that the tax * * * was properly assessed.

In the case before us there is no evidence to show that the tax imposed on the petitioner will have the effect of impairing the efficiency of any agency or instrumentality of the state government in any substantial way or amount to an interference with the exercises of a sovereign power. Neither is it shown that because of the tax the state was interfered with to any extent in securing the services of the petitioner or that it did not receive as efficient service without any additional financial or other burden on account of the tax. *Appeal of Robert G. Gordon, supra.*

*Judgment will be entered for the respondent.*