H. A. UNDERWOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25761.   Promulgated October 1, 1930.

*J. G. Korner, Jr., Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

1118

### OPINION.

SMITH: The principal point involved in this proceeding is whether the petitioner is exempt from income tax upon the fees or commissions received by him for services performed during the fiscal years ended February 29, 1924, and February 28, 1925, in the respective amounts of $68,080.60 and $44,666.15. These commissions were paid to him by the State of North Carolina under certain contracts entered into between the petitioner and the State for the performance of architectural and engineering services. The petitioner claims that he is exempt from income tax in respect of these fees and commissions under the following provision of the Revenue Act of 1926:

SALARIES OF STATE AND MUNICIPAL OFFICERS

SEC. 1211. Any taxes imposed by the Revenue Act of 1924 or prior Revenue Acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

The respondent, in construing this provision of law, has provided as follows in article 88 of Regulations 69:

*Compensation of State officers and employees.*—Compensation paid to its officers and employees by a State or political subdivision thereof for services rendered in connection with the exercise of an essential governmental function of the State or political subdivision, including fees received by notaries public commissioned by States and the commissions of receivers appointed by State

courts, is not taxable. Compensation received for services rendered to a State or political subdivision thereof is included in gross income unless (a) the person receives such compensation as an officer or employee of a State or political subdivision, and (b) the services are rendered in connection with the exercise of an essential governmental function. But see section 1211 as to 1924 and prior years.

An officer is a person who occupies a position in the service of the State or political subdivision, the tenure of which is continuous and not temporary and the duties of which are established by law or regulations and not by agreement. An employee is one whose duties consist in the rendition of prescribed services and not the accomplishment of specific objects, and whose services are continuous, not occasional or temporary. * * *

The evidence shows that the services for which the fees and commissions were received were performed by the petitioner under contract with the State of North Carolina; that under that contract he was to perform architectural and engineering services, devote his entire time and attention to the performance of such services, pay his own office expenses, employ his own draftsmen, and perform the services under the control and direction of the "Joint Building Commission," which was composed of certain officials of the State of North Carolina. The petitioner does not contend that he was an officer of the State of North Carolina. He contends, however, that he was an employee of the State within the contemplation of section 1211 of the Revenue Act of 1926 and of article 88 of Regulations 69 prescribed by the respondent with the approval of the Secretary. The respondent, on the other hand, denies that the petitioner was an employee of the State of North Carolina during the fiscal years in question and that his compensation is exempt from income tax.

The leading case upon the point involved is *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514. In that case the court held that the plaintiffs, who were engaged as consulting engineers under contracts with several States, municipalities, water and sewage disposal districts, were not employees, but rather independent contractors. In the course of its opinion the court stated:

Nor do the facts stated in the bill of exceptions establish that the plaintiffs were "employees" within the meaning of the statute. So far as appears, they were in the position of independent contractors. The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. * * *

The petitioner contends that the facts in the instant case are substantially different from those which obtained in the *Mitchell* case. He testified as follows:

At the direction of the various boards, I would be sent for to meet with the boards and discuss plans and prepare preliminary drawings, and they would finally pass upon them and instruct me to proceed with the work. In all instances except two, I would be asked to secure bids for the construction.

Nathan O'Berry, the treasurer of the State of North Carolina, testified as follows:

* * * Mr. Underwood distinctly understood that when he was employed by the Joint Building Committee, he was to give his entire time and attention to this work; and he did as far as I ever knew. At first the agreement made with Mr. Underwood lasted for two years, as I recall it. That is, the first two years Mr. Underwood was employed on the basis above named; and each one of those institutions paid its pro rata part of his salary and office expenses, including stenographer, draftsmen, etc. That continued for two years according to my recollection.

 *  *  *  *  *  *  *

Q. Will you state whether or not Mr. Underwood was subject to the orders and directions of these State officials?

A. Absolutely, under the direction of this Committee, who were appointed by and who represented the Governor; and it had full authority over Mr. Underwood. His services and time were all subject at all times to the orders and instructions from the chairman of the Joint Building Committee and of each institution under this compact.

Q. Do you know whether or not his services and activities were directed by them as to what should be done and the manner in which it should be done?

A. Yes, sir.

Although the petitioner under his contract was required to devote and did devote his entire time and attention to the performance of his contracts with the State of North Carolina, those services were such as are performed ordinarily by an architect and engineer. He drew his plans in accordance with the requirements or suggestions of his employers and he complied with their wishes with respect to the planning of the buildings and the erection of them. He did, however, maintain his own office, employ his own assistants, and bore the expense of their employment.

It will be noted from an inspection of section 1211 of the Revenue Act of 1926 and the heading thereof that that section refers to " Salaries of State and Municipal Officers." This necessarily covers wages of an employee. We think that this was all that that section was intended to cover; likewise all that the regulations of the Commissioner were intended to exempt from tax.

The petitioner received commissions from the State of North Carolina in the tax years involved running from 1½ to 6 per cent of the cost of buildings erected for services performed by the petitioner and his office in connection with architectural and engineering services. The contention of the petitioner is that the total amount of his commissions in the fiscal years involved, amounting to $68,080.60 and $44,666.15, respectively, was compensation paid by the State of North Carolina for the personal services of the petitioner.

The evidence does not support this contention. The commissions were paid to the petitioner to compensate him for the architectural and engineering services performed not only by him, but by his office under his direction. We think that clearly this requires the petitioner to be classified as an independent contractor of the State of North Carolina and not as an employee of the State of North Carolina.

In *Frank H. Mesce* v. *United States*, 64 Ct. Cls. 481; certiorari denied, 278 U. S. 612, the court held that the plaintiff, who was engaged by the city of Chicago as a building expert in connection with the valuation of buildings affected by certain local street improvements, was an independent contractor and not an employee. The court pointed out, on page 493, that the plaintiff's compensation was a specified percentage of the value of the property appraised plus $50 for each day he served in court as a witness; that he selected his own office and paid the rent therefor; that he hired and paid his own assistants and, finally, that:

* * * He used his own methods and instrumentalities and did the work of appraising values in his own way and as his judgment dictated, and in so doing he was free, and for such work he received his pay. As to how, with what assistance, and in what time he should perform it, he was judge and master. * * *

The evidence adduced in this case is somewhat different from that which obtained in the *Mesce* case, but we think it was not different in material points. The substance of the contract or contracts between the petitioner and the State of North Carolina was that he should perform architectural and engineering services for a fee based upon the appropriation made from a particular building.

The building program of the State was extensive and the State required the petitioner to devote his entire time to this work until the same was completed. In the performance of the work he was to comply with the instructions and directions of his employers. But he was to bring about these results through his own methods and instrumentalities. This, we think, stamps the petitioner as an independent contractor with the State of North Carolina, rather than as an employee. Cf. *Robert G. Gordon*, 5 B. T. A. 1047; *Emma B. Brunner, Executrix*, 5 B. T. A. 1135; *Fred H. Tibbetts*, 6 B. T. A. 827; *George W. Fuller*, 9 B. T. A. 708; *R. Clipston Sturgis*, 10 B. T. A. 1394; *Edmund D. Adcock*, 14 B. T. A. 844; *Clarence H. Johnston*, 14 B. T. A. 605.

The only other point in issue in this case is whether the respondent erroneously added to the net income reported by the petitioner for the fiscal year ended February 28, 1925, the amount of $4,018.19. Whether the respondent added to the gross income reported by the petitioner the amount in question or disallowed a deduction there-

from is not clear from the record. In filing his petition the petitioner did not attach thereto a copy of the deficiency notice from the respondent as required by the Board's rules of practice, nor was the petitioner's income-tax return for the fiscal year offered in evidence. At the hearing of the proceeding the sitting member stated to counsel:

I do not understand what the Commissioner has done with respect to the $5,000 and the $4,000 items.

*Mr. Korner:* It is difficult for me to understand, your Honor. I understand that through some mental process he has treated a certain portion as additional income. I do not know how he arrived at it. I have talked with the gentlemen here present about it, and I do not think they understand it. It may be Mr. Allen understands it, but I am sure I do not. Apparently the agent has the idea the warrant was sold at a discount, and that that was realized income to the taxpayer. Of course, it might be possible if Mr. Underwood had realized money on it, it might be a sale of something that might bring him income.

*The Member:* My question is not what the basis was, but what did he do; did he increase the petitioner's gross income for 1923 by the $5,000 and also by the $4,018.19?

*Mr. Allen:* That is correct.

\*    \*    \*    \*    \*    \*    \*

*Mr. Korner:* Except one was an increase in the first fiscal year, and the Wade Marr was in 1925.

The pleadings throw no light upon the transaction. In the petition it is stated that the error was "losses on notes" and in the allegation of facts it was stated: "(c) Wade Marr Transaction $4,058.19. To be discussed and facts presented at hearing."

The point made clear by the evidence in this proceeding is that the petitioner derived no income and sustained no loss in respect of the Wade Marr transaction. The action of the respondent in adding to the gross income $4,018.19 in respect of the transaction was error.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK, dissenting: I dissent on the last point because the petitioner has not made his contention and the facts to support it sufficiently clear to enable me to say that the Commissioner erred. I do not know what happened, therefore, I can not say who is right.

———

TRAMMELL, dissenting: In my opinion, the facts in this case distinguish it from the *Metcalf & Eddy* case. In that case, the court said:

The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty

of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor.

In this case the control or right of control by the employer which characterizes the relation of employer and employee is clearly shown. The very facts which were absent in the *Metcalf & Eddy* case are present here.

The petitioner here was not engaged for the purpose of bringing about a particular result. He was employed in order that the wishes of the board employing him might be carried out. He was at all times under the complete control and direction of the public board or officers.

If his contract of employment had not been changed in 1923 and he had remained performing the same duties and functions, but had simply received his salary as originally provided, it seems that no question could arise in this case but that he was an employee. I do not think that the mere form or method by which a person is paid should be determinative of whether he was an employee. The fact that he was during the taxable years here involved paid on a percentage basis seems to me not to be material. He devoted his entire time and attention to the work and it seems to me that he was only a means or instrumentality through which the State board could really carry out its function.

The original contract of employment provided that the petitioner would receive his compensation in the way of salary, payable to him, and in addition thereto that his office expenses should be paid. This seems not to be changed by any subsequent agreement except as to the method and amount of his compensation. I see nothing in the subsequent arrangement which provided that the petitioner would bear the expenses of his office and his employees. It seems to me that the modification of the method by which he was to be paid did not cover that feature. The State board undoubtedly paid the petitioner's office expenses under the previous arrangement, and under the subsequent arrangement the only change was the rate and amount of his compensation. The percentage on which the petitioner was paid was clearly for the purpose of paying the employees by the State. No other conclusion, it seems to me, can be drawn. The statement in the prevailing opinion that the petitioner was to bring about the desired results through his methods and instrumentalities is, in my opinion, clearly contrary to the evidence and also to the findings of fact, yet the prevailing opinion says: "This we think stamps the petitioner as an independent contractor with the State of North Carolina rather than as an employee." I do not think that the case of *Frank H. Mesce*, 64 Ct. Cls. 481, has any bearing upon this case, and I think that this case is clearly distinguishable from the other cases cited.