F. A. PEASE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50283, 50889, 65238, 66847.   Promulgated March 6, 1934.

*John Enrietto, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

### OPINION.

GOODRICH: In these proceedings, which were consolidated upon motion, petitioner contests respondent's determinations of deficiencies in income tax as follows:

| | | | |
|---|---|---|---|
| 1924 | $9,829.86 | 1928 | $1,946.60 |
| 1925 | 17,717.92 | 1929 | 2,348.13 |
| 1926 | 14,325.72 | 1930 | 2,125.38 |
| 1927 | 16,334.00 | | |

The sole issue is whether payments received by petitioner during these years from certain Ohio municipalities are exempt from Federal tax. Petitioner contends that they are so exempt because he was an officer of each of these municipalities, and, as such, was engaged in carrying out an essential function of government. Respondent determined and maintains that petitioner was an independent contractor, and has laid a tax on his receipts. Petitioner does not claim to be a servant of the municipalities; respondent does not dispute that the municipalities were political subdivisions of the state.

As our findings of fact we adopt the stipulation of counsel, but do not here repeat it since a briefer statement is sufficient for the purposes of this report.

It appears that, under ordinances providing for the employment of an engineer adopted by their respective councils, petitioner was " employed and appointed " village engineer for each of eight villages in Ohio and served as such during the period here material. During this period also he served as city engineer for the city of Cleveland Heights, having been " employed and appointed " as such by the city manager, with the approval of the council, by written contract. Generally, his duties for all these municipalities were to supervise " the improvement and repair of streets, avenues,

alleys, lands, bridges, viaducts, sidewalks, sewers, drains and water courses" within them. He passed on subdivision plats; he verified the list of property owners concerned under petitions for improvements. He, or his representative, attended council meetings and supplied requested information as to matters of engineering. He made surveys for improvements, prepared the plans, specifications, and estimates; and assisted, with his information, the solicitor in drafting ordinances pertaining to improvements. The proposal blanks and advertisements for bids on projects were prepared by him, and he received and tabulated the contractors' bids. After council awarded the work, he drafted the contract specifications and supervised its performance. He directed, inspected, and supervised the construction, tested materials (in the laboratory of his own corporation) and made monthly reports of the progress of the work on which the contractors received their pay, and issued certificates of completed contracts. After analyzing the cost of the completed improvements he prepared the assessment rolls and specified the amount to be levied against each property. In the performance of his duties he was responsible to the several village councils and, with respect to Cleveland Heights, to the city manager. He took no oath of office.

During this time petitioner was free to accept professional engagements other than his work for these municipalities. He was president and principal stockholder of the Pease Engineering Co., did some work for it and received from it a salary of $16,500 annually. Some of petitioner's work for the municipalities was done with the facilities and employees of this company. He employed also an assistant (H. C. Gallimore). Petitioner's compensation from the municipalities was based upon a percentage of the cost of the projects undertaken, except as to Cleveland Heights, which paid him a fixed salary. Respondent allowed as deductions from income expenses paid by petitioner to the Pease Co. for use of its employees, laboratory, office, and an allowance for overhead, as well as the salary of his assistant; in short, all of his expenses in connection with these employments. His gross receipts from the municipalities, the expenses allowed, and the net amounts included in income (against which petitioner protests) are as follows:

| Year | Receipts | Expenses | Additions to income |
|---|---|---|---|
| 1924 | $129,812.84 | $80,333.49 | $49,479.35 |
| 1925 | 153,778.93 | 82,656.13 | 71,122.80 |
| 1926 | 136,929.87 | 66,286.96 | 70,642.91 |
| 1927 | 185,257.34 | 101,159.11 | 84,098.23 |
| 1928 | 110,986.26 | 98,886.07 | 12,100.19 |
| 1929 | 101,399.65 | 83,568.03 | 17,831.62 |
| 1930 | 66,125.16 | 45,988.73 | 20,136.43 |

In advertisements for bids, in correspondence, in certification of invoices, and in reports of examinations made by the Auditor and by the Bureau of Public Offices of Ohio, petitioner was designated and described as "village" or "city engineer" of these municipalities and was so listed (with respect to Cleveland Heights) in a directory of city officials compiled by a department of the State University.

In attempting to determine petitioner's status, whether officer of a political subdivision or independent contractor, we are met by contradictions of evidence, a situation not unusual in cases involving this problem. Upon analysis the evidence in part supports petitioner's claim that he was an officer; in part it supports the view that he was an independent contractor, as respondent maintains. For instance, the designation of petitioner as village or city engineer (an office for which the state statute provides) by ordinance duly adopted and in official lists and directories; the assignment to him of important duties (some of which were prescribed by statute) and the reliance upon his skill and discretion in the performance of them; the right of the municipalities to call upon him for information and advice, to demand his time; and, in general, the acceptance of him by the public as an officer of these several municipalities, all tend to prove that such was his status. On the other hand, the fact that he took no oath (though the statute so required); the fact that he was not, and could not be, a qualified elector (another statutory requirement of a municipal officer in Ohio) of each of these several municipalities; the indefiniteness of his tenure in his various engagements, some of which could be terminated at the pleasure of the respective councils; the contractual characteristics of the various ordinances under which he was "appointed and employed"; the fixing (but not by statute), except in one instance, of his compensation upon a percentage basis, rather than as a definite salary; and the furnishing of his supplies, equipment, and assistants at his own, instead of the public expense—these aspects tend to characterize him as an independent contractor.

We fully recognize that no single one of the considerations mentioned, nor of the other evidentiary bits disclosed in the record and not here set out, is controlling in an attempt to classify petitioner, but that all must be weighed together and the determination made upon the whole view. So doing, and following as best we can the few clear guides emerging from the welter of decision upon this highly controversial subject, and adding our unwillingness to believe that, for the purpose of exempting his earnings from the necessary burden of taxation, one may be deemed an "officer" of nine different municipalities at one and the same time—officering at wholesale so to speak—we conclude that respondent was right in his

determination that petitioner was an independent contractor. See *Metcalf & Eddy* v. *Mitchell*, 269 U.S. 514; *Mesce* v. *United States*, 64 Ct. Cls. 481; *Lucas* v. *Reed*, 34 Fed. (2d) 263; reversed, 281 U.S. 699; *Roberts* v. *Commissioner*, 44 Fed. (2d) 168; affirming 13 B.T.A. 438.

In support of the opposite view, petitioner relies heavily upon the decision of the Supreme Court of Ohio in *Wright* v. *Clark*, 164 N.E. 512, wherein a village engineer, "appointed and employed" and serving under facts almost identical with those respecting the situation of petitioner in the case at bar, was held to be an officer of the municipality and subject to the statutory prohibition against making and profiting from other contracts with the village which employed him. Petitioner urges, of course, that we are bound by this decision, in view of the well established practice of Federal tribunals of following the settled construction of state statutes without further inquiry. But that practice has been disregarded where, as here, the construction by the state court was occasioned upon considerations of law and policy wholly different from those underlying a case concerning Federal taxation. See *Frelmort Realty Corp.*, 29 B.T.A. 181, and cases there cited. Consequently, in determining petitioner's status in his attempt to save his income from taxation, we are not bound by the view of the state court respecting his relation to the municipalities, determined from a different angle in a different problem.

Our conclusion precludes the necessity of classifying petitioner's various duties toward the municipalities, and his acts, as between proprietary and essential governmental functions. And, since there is nothing in the record to indicate that the laying of a tax upon petitioner's compensation as an independent contractor would impair his ability to perform his duties, or interfere with the ability of the municipalities to procure necessary aid to them in their undertakings, that feature need not be considered.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

Van Fossan, dissenting: The petitioner contends that he was an officer of the several municipalities referred to in the findings of fact and that, therefore, the imposition of a Federal income tax on his receipts from the municipalities is in contravention of the doctrine that the Federal Government may not tax the governmental instrumentalities of a state or political subdivision thereof. The position of the respondent, on the other hand, is that the petitioner is merely a contractor who performed services which were not essential gov-

ernmental functions and, therefore, the income in question is taxable. The facts of record are not disputed, albeit they are scantily presented in the majority opinion. Likewise that the municipalities are political subdivisions of a state is not questioned.

The doctrine upon which the petitioner bases his contention is the settled law of the United States. *Collector* v. *Day*, 11 Wall. 113; *United States* v. *Railroad Co.*, 17 Wall. 322; *Ambrosini* v. *United States*, 187 U.S. 1. Although it is sometimes difficult to classify a particular instrumentality of a state so as to determine its right to exemption from Federal taxation, it is settled that one who is an actual incumbent of an office created by state statute and engaged in a government function falls within the established exemption and his income derived from the compensation of the office is immune from Federal taxation. *Collector* v. *Day, supra; Metcalf & Eddy* v. *Mitchell*, 269 U.S. 514; *David K. Cochrane*, 26 B.T.A. 1167, and cases therein cited. Cf. *George W. Fuller*, 9 B.T.A. 708.

In the *Metcalf & Eddy* case the Supreme Court applied several tests to determine whether the plaintiffs were officers. The Court held that the facts failed to satisfy any of the tests applied. The Court said:

We think it clear that neither of the plaintiffs in error occupied any official position in any of the undertakings to which their writ of error in No. 183 relates. They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character; some were of brief duration and some from year to year, others for the duration of the particular work undertaken. Their duties were prescribed by their contracts and it does not appear to what extent, if at all, they were defined or prescribed by statute. We therefore conclude that plaintiffs in error have failed to sustain the burden cast upon them of establishing that they were officers of a state or a subdivision of a state within the exception of section 201 (a).

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. *United States* v. *Hartwell*, 6 Wall. 385; *Hall* v. *Wisconsin*, 103 U.S. 5. The term " officer " is one inseparably connected with an office; but there was no office of sewage or water supply expert or sanitary engineer, to which either of the plaintiffs was appointed.

The contracts with them, although entered into by authority of law and prescribing their duties, could not operate to create an office or give to plaintiffs the status of officers. *Hall* v. *Wisconsin, supra; Auffmordt* v. *Hedden*, 137 U.S. 310. There were lacking in each instance the essential elements of a public station, permanent in character, created by law, whose incidents and duties were prescribed by law. See *United States* v. *Maurice*, 2 Brock. 96, 102, 103; *United States* v. *Germaine*, 99 U.S. 508, 511, 512; *Adams* v. *Murphy*, 165 Fed. 304.

I do not believe, however, that the *Metcalf & Eddy* case is authority for the proposition that if there is actually an office to which an

incumbent has been appointed, the immunity of his compensation from tax depends upon his ability to meet every one of the tests suggested by the court. We will first inquire, therefore, whether the positions held by Pease were public offices.

The several municipalities to which the petitioner furnished supervisory services as an engineer were organized under the Home Rule Section of the Constitution of the State of Ohio and also pursuant to statutes of that State. Section 3 of Article XVIII of the Constitution of Ohio reads as follows:

Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. (Adopted Sept. 3, 1912.)

The phrase " all powers of local self-government " contained in the foregoing constitutional provision was construed by the Supreme Court of Ohio in *Fitzgerald* v. *Cleveland*, 88 Ohio St. 338; 103 N.E. 512. In that case the court said:

As to the scope and limitations of the phrase "all powers of local self-government", it is sufficient to say here that the powers referred to are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular municipality.

It will not be disputed that one of the powers of government is that of determining what officers shall administer the government, which ones shall be appointed and which elected, and the method of their appointment and election. These are essentials, which are confronted at the very inception of any undertaking, to prepare the structure or Constitution for any government. Obviously such power would be included among "all powers of local self-government" which any municipality has authority to exercise under section 3 of Article XVIII as to any officers of such municipality, unless the election of such officers is not a matter of municipal concern, or unless such power has been excepted in some manner from those granted.

The city of Cleveland Heights was organized on the " City Manager Plan ", General Code of Ohio, section 3515–19. The charter provides for an elective council and for the election by the council from its own members of a president thereof with the title of mayor. It also provides for the appointment by the council of a city manager who shall be the chief administrative officer of the city. It creates several administrative departments and provides for the appointment of directors thereof. A department of engineering was not created by the charter, but it is provided that the city council may create and abolish any offices not specifically created by the instrument. The charter authorizes the city manager to appoint all administrative officers except as therein otherwise provided. As to the method of appointment of such administrative officers, it is stipulated by the parties to this proceeding as follows:

The use of an agreement between the City Manager and the officer with confirmation and approval by the Council is the usual and ordinary method of filling all offices not specifically covered by the charter. This procedure has at all times been approved by the State Examiner from the Department of the Auditor of State, Bureau of Inspection and Supervision of Public Offices. Thereafter said F. A. Pease served continuously as City Engineer for the City of Cleveland Heights during the taxable years in question, all by virtue of appointments made by the City Manager of said City with the approval of the Council in each instance.

The other eight municipalities were respectively governed by a mayor and council, section 3515–29, General Code of Ohio, the mayor and members of the council each being elected for terms specified in the statute. Section 3515–29 provides that the legislative authority of a municipality is vested in the council and section 3515–30 of the General Code of Ohio provides that the council may create and discontinue municipal departments and offices. Clearly, therefore, the legislative power vested in the council by the statute and the powers of local self-government conferred on municipalities by Article XVIII of the Constitution of Ohio, as contrued in *Fitzgerald* v. *Cleveland, supra*, could only be exercised by the passage of ordinances not contrary to law.

The office of engineer of a municipality was created by a statute of the State of Ohio. Sections 4364 and 4366 of the General Code of Ohio, which relate to cities and villages within the state, provide as follows:

SEC. 4364. *General duties.* Under the direction of council, the street commissioner, or an engineer, when one is so provided by council, shall supervise the improvement and repair of streets, alleys, lands, lanes, squares, wards, landings, market houses, bridges, viaducts, sidewalks, sewers, drains, ditches, culverts, ship channels, streams and water courses. Such commissioner or engineer shall also supervise the lighting, sprinkling and cleaning of all public places, and shall perform such other duties consistent with the nature of his office as council may require.

SEC. 4366. *Duties of various officers; compensation.* In each municipal corporation having a fire engineer, civil engineer or superintendent of markets such officers shall each perform the duties prescribed by this title and such other duties not incompatible with the nature of his office as the council by ordinance requires, and shall receive for his services such compensation by fees, salary or both as is provided by ordinance.

The sections refer to the engineer's " office "; they describe his duties and speak of him as an " officer."

Each of the nine municipalities, acting with the right of local self-government, and in the manner provided by the fundamental law of their respective governmental organization, appointed the petitioner to this office so created. That he was the engineer for each municipality is stipulated. With respect to the appointment

by the city of Cleveland Heights, it is stipulated, in effect, that his appointment was made in the same manner as appointments to all other offices not specifically designated in the city's charter; namely, by contract executed by the city manager and approved by the mayor and council. His appointments so made by the city of Cleveland Heights were for definite terms of one year each and his compensation stated in the agreement of appointment was approved by the mayor and council.

The other eight municipalities, acting by ordinances passed by their respective council, appointed Pease as village engineer. These ordinances, on their face, were acts of municipal legislation and not contracts. Some of these ordinances specified the petitioner's duties in terms substantially similar to those of section 4364 of the General Code of Ohio and the facts show that in respect to all of the municipalities involved herein his duties and powers were such as are defined in the statute. Moreover, it clearly appears in the facts that the petitioner's duties as engineer for the nine municipalities were such official duties as would be performed by a municipal officer only. As engineer he prepared an assessment roll, fixing special assessments against property benefited by public improvements, and determined what property was so benefited. As engineer he was a member of a board of review to review assessments made. These acts were quasi-judicial in their nature and were of a character which is consistent only with an official status.

In the case of *Wright* v. *Clark*, 119 Ohio St. 462; 164 N.E. 512, it appeared that the plaintiff in error had been designated to serve as village engineer for the village of Bedford, Ohio, by an ordinance similar in form to those involved in these proceedings. The basis of the action against Wright was an alleged violation of section 3808 of the General Code of Ohio. That section provides in substance that no officer of a municipal corporation shall have any interest in the expenditure of money on the part of the corporation other than his fixed compensation, and the section provides a penalty for violation. The fundamental issue was whether Wright was an officer. The Supreme Court of Ohio, referring to the resolution passed by the council of the village of Bedford, naming Wright as village engineer, said that all services performed by Wright were performed under the resolution. The court also said:

In the case of *State ex rel. Attorney General* v. *Jennings*, 57 Ohio St. 415, 49 N. E. 404, 63 Am. St. Rep. 723, Judge Minshall discussed the essentials of a public office and reached the conclusion that a public officer is one who exercises in an independent capacity a public function in the interest of the people by virtue of law, which is only saying in another form that he exercises a portion of the sovereignty of the people delegated to him by law. Sections

4364 and 4366 impose upon a city or village engineer the duty to "supervise the improvement and repair of streets, avenues, alleys, lands, lanes, squares, wards, landings, market houses, bridges, viaducts, sidewalks, sewers, drains, ditches, culverts, ship channels, streams and water courses." Those statutes further impose upon such engineer any other duties consistent with the nature of his office, as council may require. By reference to the resolution it will be seen that he was charged with the duty of preparing plans, specifications, estimates and profiles, together with engineering work necessary for the installation of water improvements, pavements, sewers, and other contract improvements to their completion. He was also charged with inspection of all such improvements. Naturally the terms of the resolution would imply that he should supervise the letting of contracts, determine when the work was properly completed, and make preliminary and final estimates and certificates to authorize payment. The evidence shows that he in fact did all of these things. The statute having named an engineer as an officer, it only remains to be determined whether Wright in fact exercised the powers and performed the duties referred to in the statutes. Even without the aid of those statutes, it is inevitable that Wright should be determined to be an officer. His position was one which involved the exercise of judgment, skill, discretion, initiative. His judgment was depended upon by those who were charged with ultimate responsibility. It is said in 28 Cyc. 583: "A city engineer is an ' officer ' within a statute providing for the appointment of officers by the municipal government * * *. In determining whether a contract for street improvements has been substantially complied with, the city engineer acts in the exercise of quasi-judicial functions." An engineer certainly occupies a very responsible position in protecting the interests of the public in the expenditure of public funds. His inspection requires that he should ascertain and certify quantities and qualities of materials, and the nature of workmanship. Even in this village of 6,000 inhabitants the amounts of money expended for public construction during his period of service must have been approximately a million dollars. The engineer is peculiarly the officer who stands between the village and the threatened impositions of those who have dealings with the village in matters of public work.

Tested by the standards of common law definitions, Wright must be held to fully measure up to the essential elements of a public officer. It is further claimed by Wright that the council created the office and filled it in the same resolution. We do not take this view of the matter. The office was created by Section 4364, General Code. It was filled by the resolution of council.

The duties performed by the petitioner herein were the same class of duties as those performed by the plaintiff in error in the *Wright* case. No distinction exists between the facts in this case and those in the *Wright* case except that the petitioner in these proceedings performed services as engineer for nine municipalities, while in the *Wright* case it does not appear that the plaintiff in error acted as village engineer for more than one municipality. But there is no statute of Ohio declaring that the same individual may not be engineer for several municipalities, nor do we know of any statutory requirement in Ohio that an officer shall be a resident of the municipality in which he is an officer.

It is my opinion that the *Wright* case is determinative of the question as to the character of the positions occupied by petitioner. He was an officer of the several municipalities. The contracts of appointment executed by the petitioner and the city manager of Cleveland Heights, with the approval of the mayor and council, did not create an office. They filled one already provided by statute, and the same is true with respect to the ordinances referred to in the findings of fact.

The respondent contends, however, and the majority opinion holds, that the case of *Wright* v. *Clark, supra,* does not bind the Federal Government. It is true that the Federal courts have held that the Federal taxing acts have their own criteria. *Burnet* v. *Harmel,* 287 U.S. 103; *Weiss* v. *Wiener,* 279 U.S. 333. But it has also been held that state law controls where the operation of a taxing act, either by express language or by necessary implication, is dependent upon state law. *Crooks* v. *Harrelson,* 282 U.S. 55; *Poe* v. *Seaborn,* 282 U.S. 101; *United States* v. *Cambridge Bldg. & Loan Co.,* 278 U.S. 55. If we must consult state law to determine whether a building and loan company is of such a corporate character as to be exempt from Federal taxation under the taxing statutes (*United States* v. *Cambridge Bldg. & Loan Co., supra*), it would seem that with like necessity we must refer to state statutes as interpreted by the highest court of the state to determine what offices have been created within the borders of a state and by what procedure they may be filled. The interpretation of a state statute by the highest court of the state becomes a part of the statute itself and is as binding on the United States as the text of the statute. *Balkan* v. *Woodstock Iron Co.,* 154 U.S. 117; *Walker* v. *Marks,* 17 Wall. 648. However, even if the decision of the Ohio Supreme Court is not binding in the matter, I am of the opinion that it correctly interpreted the law and that our decision on the law of the instant case should be to the same effect.

It is objected by the respondent that the petitioner took no oath of office and that, therefore, he was not an officer judged by the criteria stated by Mr. Justice Stone in *Metcalf & Eddy* v. *Mitchell, supra.* Examination of the Court's opinion in that case leads to the conclusion that the Court does not hold that one can not be an officer unless he has taken an oath of office. I understand the Court's reference to an oath to mean that the taking of an oath is one of the customary requirements of office, and, therefore, one of the usual indicia of office. The statutes of Ohio provide that any municipal officer shall take an oath before entering upon the duties of his office, and section 4242 of the General Code provides in effect that the council may declare vacant the office of any person who has failed to take

the oath of office. It does not follow, however, that the taking of the oath is a condition precedent to the incumbency of office. Unless the council has acted under the statute and declared the office vacant the incumbent is an officer, notwithstanding the failure to take an oath. The council of the municipalities involved herein did not declare the office of engineer vacant at any time and it is clear from the facts that the petitioner performed his duties during all of the taxable years. In the *Wright* case the plaintiff in error had taken no oath of office. Nevertheless the court held that he was an officer.

It is contended also by the respondent that, since some of the ordinances provided that the petitioner's appointment might be rescinded on due notice and since, admittedly, any of the ordinances might be repealed at any time, there was no permanence attaching to his appointment and that, therefore, the facts in this respect fail to satisfy the test of permanence. *Metcalf & Eddy* v. *Mitchell, supra.* It is my opinion that these facts are of little importance with respect to the issue involved herein, for the reason that in general it is within legislative power to discontinue as well as to create and fill offices. *Hall* v. *Wisconsin*, 103 U.S. 5. In *Hugh W. Ogden*, 24 B.T.A. 1239, where the respondent, as in the present proceedings, contended that the petitioner was an independent contractor, we held that the fact that the petitioner's tenure was indeterminate in time did not of itself make him an independent contractor.

Nor can it now be doubted that the functions performed by petitioner were essential governmental functions, a question mooted by the majority opinion. As said by the Supreme Court in *Trenton* v. *New Jersey*, 262 U.S. 182, " the basis of the distinction [between governmental and proprietary powers] is difficult to state, and there is no establish rule for the determination of what belongs to the one or the other class." In *South Carolina* v. *United States*, 199 U.S. 438, the Supreme Court observed that the decisions " indicate that the thought has been that the exemption of state agencies and instrumentalities from national taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the state in the carrying on of an ordinary private business." In the case before us there is no suggestion of private business. Petitioner had supervision of the installation of all public improvements. The Supreme Court of Ohio, in *Wooster* v. *Arbenz* (1927), 116 Ohio St. 281; 156 N.E. 210, made the following observation:

The state of Ohio has always recognized its obligation to keep the public ways open, and has delegated that duty to municipalities so far as streets and alleys within municipalities are concerned, and, further recognizing the public

character of that obligation, has enjoined by § 3714, General Code, upon municipalities an obligation to keep them open, in repair, and free from nuisance. This duty was for the first time imposed by legislation on May 3, 1852 (50 Ohio Laws, p. 244 § 63), in practically the identical language in which that obligation is now couched in § 3714, General Code. By that enactment the Legislature of Ohio has removed all doubt as to the public character of streets and alleys within municipalities, and by the same token it has become firmly established that the maintenance of streets, alleys, and other highways is the performance of a governmental function. * * *

Though the actual installation of public streets has been called a proprietary function by some courts, there would seem a valid distinction between the work of those actually installing the improvement and that of the official charged with the supervision, on behalf of the city, of such work, involving as it does the direct protection of the financial interests of the city and its taxpayers. This latter would seem clearly to be a governmental function.

In *Harris* v. *District of Columbia*, 256 U.S. 650, the Supreme Court of the United States held that the sprinkling of streets to keep down dust for the purpose of promoting the health and comfort of the general public is a public or governmental act. Certainly the supervision of the laying out of sewers for proper sanitation and the installation of similar public improvements are official duties incident to the provision of necessities essential to the health of the citizens. They are not functions capable of performance equally well by those acting in a private capacity. Nor are they conducted by the municipality for profit. Cf. *South Carolina* v. *United States, supra*. I am of the opinion that the duties which petitioner performed were essential governmental functions. For the most recent discussion of the trend of the law on this subject see *Leland Powers* v. *Commissioner*, 68 Fed. (2d) 634, in which the court reversed the Board.

It will readily be admitted that in some respects petitioner bore resemblance to a contractor. He furnished the services of his organization for municipal projects, he maintained a testing laboratory and otherwise found it necessary to employ others to aid him. His charges were in some instances on a percentage of work done basis. I do not believe, however, that these facts are of preponderating weight, nor do they overcome the express holding of the Supreme Court of Ohio that a man in all ways similarly situated was an officer of the municipalities which he served as engineer.

It is my opinion that the petitioner was an officer of the political subdivisions of the State of Ohio engaged in performing essential governmental functions and that, therefore, the Federal Government may not tax his compensation as such officer.