Eric E. Hall, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 52555, 71062. Promulgated January 24, 1936.

*James H. Winston, Esq.,* and *E. G. Ince, Esq.,* for the petitioner.
*Paul D. Page, Jr., Esq.,* for the respondent.

OPINION.

MELLOTT: Petitioner contends that the compensation received by him from Cook County is exempt from the Federal income tax. He argues that his "office, position or place of employment" as county architect is an integral part of the board's regular establishment for the management of the affairs of the county and one of the means by which it exercises its sovereignty or performs its usual and essential governmental functions. If it is, then the exemption must be recognized, for the state must be "left free

from undue interference" by the Federal Government in order that it may administer its affairs within its own sphere. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Collector* v. *Day*, 11 Wall. 113; *Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 429; *Ambrosini* v. *United States*, 187 U. S. 1; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514; *Helvering* v. *Powers*, 293 U. S. 214.

While the rule exempting from Federal income tax the compensation of an officer or employee of a state or political subdivision thereof engaged in the performance of a usual and essential governmental function is well settled, and has been applied by the courts and by this Board in many cases, a "twilight zone" yet exists and "just what instrumentalities * * * are exempt from taxation * * * can not be stated in terms of universal application." There is no formula which can be applied in every case (*Metcalf & Eddy* v. *Mitchell, supra*) but each must be decided upon its own facts. Do the facts which we have found require recognition of such immunity or should the respondent's determination of deficiencies be approved?

Petitioner asserts that he was either an officer or an employee of a political subdivision of the State of Illinois. We will first pass upon his contention that he was an officer.

The Revised Statutes of the State of Illinois provide that the president of the board of county commissioners shall appoint all officers and employees of Cook County and fix their salaries or rate of compensation prior to the adoption of the annual appropriation (ch. 34, sec. 66 (9), Callaghan's Illinois Revised Statutes), and further provide that the president of the board shall, with the advice and consent of the board, appoint the warden of the county hospital, the county agent, the county physician, the county attorney, the county architect, etc. Ch. 34, sec. 66 (20), Callaghan's Illinois Revised Statutes.

In support of his contention that he was an officer, petitioner argues that he and each of his predecessors accepted the "office" upon the basis of the compensation fixed by resolution of the board of county commissioners—fixed in obedience to the specific direction of the statute so to do; and each incumbent filed a bond conditioned "for the faithful discharge of the duties of his office."

We do not believe that the giving of a bond, though in form an official bond, requires us to find that the principal therein named is necessarily an officer. While the taking of an oath and the giving of a bond are sometimes said to be indicia of an officer, the mere fact that a bond is given or an oath is required, does not *ipso facto* make one an officer.

In *Metcalf & Eddy* v. *Mitchell, supra,* the Supreme Court of the United States defined an office in the following language:

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument, and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. * * * The term "officer" is one inseparably connected with an office. * * *

A search of the record fails to disclose that petitioner's term and duties were fixed by law. Moreover, it does not show any "fixing" of petitioner's compensation, at least as defined by the courts of Illinois. "Fixing", as construed by such courts, means making definite and certain. As the court said in *McGovney* v. *Village of Melrose*, 145 Ill. App. 329 (affd. by the supreme court, 89 N. E. 264), in construing a similar statute, "This is apparent from the words following 'such fees or compensation shall not be increased or diminished, to take effect during the term for which any such officer was selected or appointed.' Manifestly, unless the compensation be a sum certain, it cannot be told whether it has been increased or diminished." Cf. *Koons* v. *Richardson*, 227 Ill. App. 477; *Koons* v. *City of Mt. Vernon*, 245 Ill. App. 165; *George M. Stevens*, 31 B. T. A. 1035. Sec. 10, art. 10, Constitution of Illinois.

We have found that petitioner was paid his compensation, not out of the general funds of the county, but out of the money raised by the sale of bonds issued in connection with the construction projects which he planned and supervised. While this is the usual method adopted in paying the fees of an architect, it is not the method apparently required by the constitution and the general statutes of Illinois for the payment of "county officers."

Thus, under the sixth subsection of section 64 of chapter 34, Smith-Hurd's Revised Statutes, it is provided that the board shall adopt a resolution appropriating "such sums of money as may be necessary to defray all necessary expenses and liabilities * * * to be * * * paid or incurred"; that "said appropriation bill shall specify the several objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose." Included within the appropriation bill are such items as current salaries of county officers and employees, provision for the payment of principal and interest on county indebtedness, maintenance of county property and institutions, including courts and juries, dieting occupants of the jails, prisons, hospitals, and industrial schools, and the cost of elections. But no sum would be appropriated in such an appropriation bill for the payment of the compensation of this petitioner.

It is our conclusion that petitioner has failed to sustain the burden cast upon him of establishing that he was an officer of a state or

political subdivision thereof, for clearly, neither the tenure, duration, emoluments, nor duties of county architect were fixed by law.

Petitioner devotes little space in his brief to his contention that he was an employee. He merely states: "But admitting for the purpose of consideration, without conceding it to be the fact, that some attribute that usually attends an office is absent in the case of the county architect of Cook County, yet the consequence of such absence could only be to lower the rank of county architect from that of 'office' to that of 'employee.'" This does not necessarily follow, especially where, as here, there is no evidence of that direction and control so essential to the relationship of employer and employee. A careful study of the record convinces us that petitioner was not an employee, and we so hold.

It is argued that the fact petitioner was appointed to "an office, position or place or employment" is sufficient in itself to compel recognition of the exemption. This statement, however, is too broad. As said by the Supreme Court in the recent case of *Helvering* v. *Powers, supra:* "If the dealers in South Carolina, or those employed to operate the state stores in Ohio, *had been denominated public officers*, and, as such, had been assigned definite tenure and duties, the same result would have been reached, as the principle involved would be equally applicable." (Italics supplied.) The immunity does not attach simply because one may be designated an officer—or employee—but, as the court stressed in the above case, the "nature of the activity" and "the fundamental reason for denying federal authority to tax" must be considered.

The "fundamental reason" requiring the recognition of the exemption or immunity is "that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. * * * Neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. * * * direct interference with the functions of government itself * * * (is) * * * beyond the taxing power." (*Metcalf & Eddy* v. *Mitchell, supra.*)

The limitation must receive a practical construction. Exemption should be denied unless the failure to recognize it will result in a "direct interference with the functions of government itself"—the "usual governmental functions"—or curtail in any substantial manner its sovereign powers. It should be allowed if failure to do so "impairs in any substantial manner the ability" of the one receiving the compensation to discharge his obligation to the state, or impairs the "ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings." (*Metcalf & Eddy* v. *Mitchell, supra.*)

Petitioner had the burden of establishing by satisfactory and competent evidence that the respondent erred in determining the above deficiencies. Possibly evidence could have been produced justifying us in finding as a fact that failure to recognize the claimed exemption would impair the ability of Cook County "to procure the services of" an architect; but no such evidence was introduced. On the contrary, petitioner testified that the county paid him the same compensation as that prescribed by the Illinois Society and the American Institute of Architects for such work.

Q. Do they have any schedule, or prescribed fees, any limitation with regard to fees?
A. Yes.
Q. State what they are.
A. They are substantially the same as I am getting from the county; I think their percentage is a little different from the county, but the total amount is the same.

In other words, he received a total of 6 percent—exactly the amount which a private employer would have paid him, and the same amount that he, or any other member of the associations would have charged any municipality. It is clear, therefore, that the incidence of taxation or exemption upon the compensation received by him from the county did not "impair in any substantial manner" his ability to discharge his obligation to the state, nor impinge upon the ability of the county to have its necessary architectural work done for it.

Both parties cite and rely upon—or attempt to distinguish—*John Reid, Jr.*, 28 B. T. A. 1217. In that case we held that one holding the position and discharging the functions of city architect of San Francisco, by virtue of a resolution of the board of public works defining his duties and making provision for his compensation upon the basis of a percentage of the cost of construction projects in respect of which his services were performed, was not entitled to have such compensation exempted from the Federal income tax. The facts in that case are quite similar to the facts in the instant case. The appointment of each petitioner was sanctioned by law; the resolution in the *Reid* case designated him "City Architect" while the one in this case designated petitioner "County Architect." The compensation of each was 6 percent—the amount scheduled by the American Institute. Each rendered substantial services for which he received no compensation. Each maintained a staff of assistants and engineers to aid in completing the tasks assigned, and each maintained a private office. Reid was furnished an office and staff in the City Hall, but petitioner was not furnished any office or assistants by the county. Each was paid out of the funds allocated to the improve-

ment which he planned and supervised rather than out of the "general fund" or the fund derived from the imposition of direct taxes levied for the payment of salaries of officers and employees.

Petitioner in his brief directs our attention to certain language in the *John Reid, Jr.*, case, which, he says, "expressly recognizes the exemption of the compensation of one who, like Hall, is an integral part of the regular establishment of a state or political subdivision." The language relied upon is:

> On the other hand, if an architect, lawyer, physician, or other professional man is employed by a state to perform whatever tasks may be assigned him (although not precluded from accepting other employment), if his service is continuous and regular, if his work is of a routine and recurring character, or if no definite object is to be accomplished, he has been held an officer or employee and not an independent contractor. *United States* v. *J. Turner Butler*, 49 Fed. (2d) 52; *Burnet* v. *Livezey*, 48 Fed. (2d) 159; affirming 15 B. T. A. 806, et al.

While the quotation is correct, the remainder of the paragraph is quite pertinent and likewise should be considered. Immediately following the quoted portion, we said:

> Although petitioner's service was in fact regular and continuous, this was because of the city's building activity; had it ceased, he would have been without work or remuneration. While he did much routine, attended meetings, and made recurring reports, and in fact gave recommendations whenever asked, these services were beyond the express contemplation of the resolution and had no effect upon his compensation. Each task which the resolution authorized had to be specially assigned, and any compensation which he might draw had to rest entirely on such special assignment, which, moreover, the Board of Public Works was not legally bound to give in any instance. Had it become dissatisfied with his services, no discharge would have been necessary to dismiss him; a mere failure to assign him new projects would instantly have left him without responsibility of any kind and without compensation. If his services were continuous, the continuity resulted from no term employment, but from a series of fresh employments which kept him steadily engaged. This is characteristic of an independent contractor, not an employee.

Numerous cases have come before us where architects or engineers, having performed services for states or political subdivisions, have claimed that the compensation received was exempt from the Federal income tax. Some of the architect cases are *Emma B. Brunner, Executrix*, 5 B. T. A. 1135; *Clarence H. Johnston*, 14 B. T. A. 605; *R. Clipston Sturgis*, 10 B. T. A. 1394; *H. A. Underwood*, 20 B. T. A. 1117 (*Underwood* v. *Commissioner*, 56 Fed. (2d) 67); *John E. Beaman*, 22 B. T. A. 1387; *John Reid, Jr., supra*. Engineer cases— *Fred H. Tibbetts*, 6 B. T. A. 827; *George W. Fuller*, 9 B. T. A. 708; *John R. Spelman*, 18 B. T. A. 313; *Joseph Milton Howe*, 19 B. T. A. 849; *Edward M. Lynch*, 30 B. T. A. 727; *F. A. Pease*, 30 B. T. A. 17. In all the above cases exemption was denied.

We refuse to exalt artificiality above reality or to give effect to form rather than substance. Our findings show that petitioner was *in fact* an independent contractor. He performed the same services as were performed by the taxpayers in the above cited cases; he received his compensation on the same basis. He selected his own office, employed his own assistants, retained the right to discharge them and to use them indiscriminately in his work either for the county or for others. He was not required to work any particular number of hours or days, or to report for work at any particular time. He selected his own instrumentalities, employed such methods as he saw fit to accomplish the given tasks, and was paid upon the basis of completed work. The county was not interested in where or how the tasks were completed; and only to a limited extent in *when* they were completed; petitioner completed such tasks in his own way and as his judgment dictated, and was free to adopt any means to accomplish the desired results.

We hold that the compensation received by petitioner from Cook County is not exempt from the Federal income tax and the respondent did not err in determining the deficiencies.

*Judgment will be entered for the respondent.*