Marshall, C. J.
 

 This action was begun in the court of common pleas of Cuyahoga county by Arthur H. Clark and John Freeman, as taxpayers, on behalf of the village of Bedford, Ohio, and .all taxpayers thereof, to recover a judgment in approximately the sum of $12,000 against Bayard T.
 
 *463
 
 Wright. It is alleged that Wright is the village engineer of the village of Bedford, and that the office of village engineer is a public office, and that Wright held said office for the years 1924 and 1925. During the period of his alleged incumbency it is claimed that he entered into numerous contracts with the village of Bedford for grading and other public works, and sold cinders and other supplies for such public works to the village, for which he was paid by the village more than $12,000. The basis of the action is found in Section 3808 of the General Code, which provides:
 

 “No member of the council, board, officer or commissioner of the corporation, shall have any interest in the expenditure of money on the part of the corporation other than his fixed compensation. A violation of any provision of this or the preceding two sections'shall disqualify the party violating it from holding any office of trust or profit in the corporation, and shall render him liable to the corporation for all sums of money or other thing he may receive contrary to the provisions of such sections, and if in office he shall be dismissed therefrom.”
 

 Issue was joined by Wright upon the question of his being an officer, and he denied that any of the contracts set forth in the petition were in violation of the statutes of Ohio, or that payments therefor were illegal. Upon the trial there was evidence that Wright was paid for engineering services approximately $30,000, but plaintiff did not seek to recover any part of that. This evidence is referred to, not because it has any bearing upon the question of illegality, but solely because so large a sum paid for engineering services on a commission basis indicates
 
 *464
 
 that approximately a million dollars was expended by the village for public improvements during that period. Each of the contracts entered into and executed by Wright was under $500, it being asserted that no invoices of more than $500 were rendered, in order that the law requiring competitive bidding on all contracts over $500 might be evaded. There seems to be no serious contradiction concerning the contracts between Wright and the village and the furnishing of materials, and the amount paid to him. The testimony was heard by a jury, but at the close of all the testimony counsel for defendant moved the court to withdraw the evidence from the jury and. to direct a verdict in favor of defendant. Thereupon counsel for the plaintiffs moved for verdict in plaintiffs’ favor. The court found and decided in favor of the plaintiffs and against the defendant, and judgment was entered in the sum of $13,770.63. On error being prosecuted to the Court of Appeals that court affirmed the judgment. A motion to certify the cause was allowed by this court.
 

 The only question of law submitted for our determination is whether Wright was a public officer of the village of Bedford and whether the moneys claimed were paid in excess of his fixed compensation.
 

 On January 3, 1924, Wright made a proposal to the village to perform engineering services, and at a meeting of the village council on the same day a resolution was adopted:
 

 “Resolution No. 645.
 

 “A resolution providing for the employment of B. T. Wright, as Village Engineer, for the Village of Bedford, State of Ohio, for the years 1924 and 1925.
 

 
 *465
 
 “Be it resolved by the Council of the Village of Bedford, State of Ohio.
 

 “Section I. That B. T. Wright, be and he is employed as Engineer for said Village for the years 1924 and 1925, upon the following terms and conditions.
 

 “For Water Improvements.
 

 “Three (3) per cent, of the actual cost of construction to cover preparation of all plans, specifications, estimates and profiles, together with the engineering work necessary for the installation of said water improvements to their completion.
 

 “For Pavement, Sewer, and all Other Contract Work.
 

 “Five (5) per cent, of the actual cost of construction to cover preparation of all plans, specifications, estimates and profiles, together with the engineering work necessary for the installation of said pavement, sewer, or other contract improvements to their completion.
 

 “Inspection.
 

 “In case inspection is required in connection with water, pavement, sewer or other contract improvements as noted above, an additional two (2) per cent, of the actual cost of said improvement shall be paid.
 

 ‘ ‘ General.
 

 ■ “Compensation to be made on estimates rendered in favor of the Contractor, or for work completed.
 

 “In the event of miscellaneous work, or when plans, specifications, estimates and profiles are prepared- and no further work on said improvement is done, the Village shall pay reasonable compensation upon bills duly rendered in accordance with the general practice in use for work of this nature.
 

 
 *466
 
 ■ “Section II. This resolution shall take effect and be in force immediately after its passage.
 

 “Passed this 3rd day of January, A. D. 1924.”
 

 Whatever engineering services were performed by Wright were performed under that resolution, and while the claim and recovery in this case do not include moneys paid for engineering services, that resolution is important as bearing upon the question whether Wright was a village official. The resolution designates him as village engineer. Nothing is found in the resolution relating to furnishing materials or che execution of contracts for public works other than engineering services. Any contracts for materials or for building of public works must necessarily have been pursuant to other contracts with the village. Letterheads of the village were printed upon which appeared the words, “B. T. Wright, City Engineer.” In certifying the vouchers to the council for payment, he signed the same as “Village Engineer.” In some instances when invoices were rendered by Wright for cinders or contracts they were approved and certified for payment by Wright as “Village Engineer.” In other instances bills were approved by the finance committee of council upon certificate of Wright as village engineer. • There were six members of the village council, and three of them were employees of Wright during a part or the whole of the period of the contract. Wright purchased a large part of the gasoline used in his trucks from a fourth councilman. Two of the eouncilmen employed by Wright were members of the street committee. This is the same committee which checked up and verified the cinders sold by Wright to the village. Upon thib
 
 *467
 
 point Wright was asked: “Now do they do that in their official capacity or do they do that because they are on your payroll ? ’ ’ His answer was: ‘ ‘ They did that in both capacities. ’ ’ He was further asked: “Were they serving two masters?” Answer: “I suppose so.”
 

 The only legal question presented by this error proceeding is whether all these facts and circumstances, in connection with the resolution of council, constituted him as an official of the village. As bearing upon this question, we are cited to two sections of the General Code:
 

 “Sec. 4364.
 
 General Duties.
 
 — Under the direction of council, the street commissioner, or an engineer, when one is so provided by council, shall supervise the improvement and repair of streets, avenues, ,alleys, lands, lanes, squares, wards, landings, market houses, bridges, viaducts, sidewalks, sewers, drains, ditches, culverts, ship channels, streams, and water courses. Such commissioner or engineer shall also supervise the lighting, sprinkling and cleaning of all public places, and shall perform such other duties consistent with the nature of his office as council may require. ’ ’
 

 “Sec. 4366.
 
 Duties of Various Officers; Compensation.
 
 — In each municipal corporation having a fire engineer, civil engineer or superintendent of markets such officers shall each perform the duties prescribed by this title and such other' duties not incompatible with the nature of his office as the council by ordinance requires, and shall receive for his services such compensation by fees, salary or both as is provided by ordinance.”
 

 In determining whether Wright was an' officer we
 
 *468
 
 must look to the resolution of January 3,- 1924, wherein he was designated as engineer for the village; to the character of service which his employment demanded, under the terms of that resolution; to the duties and functions he in fact performed under Ms employment, as disclosed by the evidence; and to Sections 4364 and 4366 of the General Code, wherein an engineer of a municipality is referred to as an officer and the duties and responsibilities of such officer are defined. It is urged by counsel for Wright that we should look to the principles of the common law to determine whether the manner of his employment and the character of the service rendered by him constitute Mm an official. He has further urged with citation of authority that there is a distinction between an office and a contract for employment. This distinction is found in certain classes of cases, but cannot be decisive of the question. There are many standard definitions of an office, and in more than one of them an office is referred to as an employment. If the proposal made by Wright and the resolution adopted by the village council on the same day be held to constitute .a contract between Wright and the village, it would not be decisive of the matter, because every public office has the characteristics of a contract, including parties, consideration, and subject-matter. This court in former cases has thrown some light upon this subject. In
 
 State, ex rel.,
 
 v.
 
 Brennan,
 
 49 Ohio St., 33, 38, 29 N. E., 593, 594, Judge Spear in a well-considered opinion reviewed many of the definitions of an office, with the followifig result:'
 

 “It is not important to define with exactness all ■ the characteristics of a public office, but it is safely
 
 *469
 
 within bounds to say that where, by virtue of law, a person is clothed, not as an incidental or transient authority, but for such time as denotes duration and continuance, with independent power to control the property of the public, or with public functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office.”
 

 Except for the element relating to yearly salary, that definition has peculiar application to the case of Mr. Wright. In inserting the element of yearly salary, Judge Spear was only referring to the duties and responsibilities of Brennan as a stationery storekeeper for Hamilton county, and did not of course mean to say that a stated yearly salary is an essential feature of a public office. In the case of
 
 State, ex rel. Attorney General,
 
 v.
 
 Jennings,
 
 57 Ohio St., 415, 49 N. E., 404, 63 Am. St. Rep., 723, Judge Minshall discussed the essentials of a public office and reached the conclusion that a public officer is one who exercises in an independent capacity a public function in the interest of the people by virtue of law, which is only saying in another form that he exercises a portion of the sovereignty of the people delegated to him by law. Sections 4364 and 4366 impose upon a city or village engineer the duty to “supervise the improvement and repair of streets, avenues, alleys, lands, lanes, squares, wards, landings, market houses, bridges, viaducts, sidewalks, sewers, drains, ditches, culverts, ship channels, streams, and water courses.” Those statutes further impose upon such engineer any other duties consistent with the nature of his office, as council
 
 *470
 
 may require. By reference to the resolution it will be seen that he was charged with the duty of preparing plans, specifications, estimates, and profiles, together with engineering work necessary for the installation of water improvements, pavements, sewers, and other contract improvements to their completion. He was also charged with inspection of all such improvements. Naturally the terms of the resolution would imply that he should supervise the letting of contracts, determine when the work was properly completed, and make preliminary and final estimates and certificates to authorize payment. The evidence shows that he in fact did all of these things. The statute having named an engineer as an officer, it only remains to be determined whether Wright in fact exercised the powers and performed the duties referred to in the statutes, liven without the aid of those statutes, it is inevitable that Wright should bé determined to be an officer. His position was one which involved the exercise of judgment, skill, discretion, initiative. His judgment was depended upon by those who were charged with ultimate responsibility. It is said in 28 Cyc., 583: “A city engineer is an ‘officer’ within a statute providing for the appointment of officers by the municipal government. *
 
 * *
 
 In determining whether a contract for street improvements has been substantially complied with, the city engineer acts in the exercise of quasi judicial functions.” An engineer certainly occupies a very responsible position in protecting the interests of the public in the expenditure of public funds. His inspection requires that he should ascertain and certify quantities and qualities of materials, and the nature
 
 c'l
 
 workmanship. Even
 
 *471
 
 in this village of 6,000 inhabitants the amounts of money expended for public construction during his period of service must have been approximately a million dollars. The engineer is peculiarly the officer who stands between the village and the threatened impositions of those who have dealings with the village in matters of public work.
 

 Tested by the standards of common-law definitions, Wright must be held to fully measure up to the essential elements of a public officer. It is further claimed by Wright that the council created the office and filled it in the same resolution. We do not take this view of the matter. The office was created by Section 4364, General Code. It was filled by the resolution of council.
 

 Section 3808, General Code, should not be construed to apply in strictness only to persons who hold an office. The language of that section refers to boards and commissions as well as members of council and , officers. ■ It was the purpose of the Legislature in that enactment to reach all persons holding positions in a city or village government who are charged with official responsibility in conducting an economic administration of corporate affairs, and to prohibit them from having any interest in the expenditure of corporate funds. We must therefore look to the spirit as well as the letter of that statute. It is a part of such construction to determine what character of member of a board or officer'is included in the ban on having any interest in the expenditure of moneys of the municipality. It should be construed with reference to the occasion and necessity for its enactment, the evils existing or threatened, and the remedy which the statute is de
 
 *472
 
 signed to provide. It should be so construed as to advance its object by suppressing the mischief and securing the benefits intended. The statute will be nullified if, by construction, it should be held not to reach an engineer, who is charged with the preparation of plans, specifications and estimates, with the supervision and letting of contracts, and with the inspection of quantities and qualities of materials used, and the approval and payment of estimates.
 

 It was not determined in the courts below— neither do we determine in this court — that unreasonable profits or fraud entered into these transactions. "We have, however, carefully scrutinized this record to learn how Mr. Wright handled the work of the village of Bedford in those transactions where he was an interested party, and, while we assume that no actual fraud was practiced, it is plain that if every municipality followed the same course the temptations to fraud would be enormously increased. Unreasonable profits, actual fraud, conspiracy, and graft are not essential elements of this statutory inhibition. The Legislature has in sweeping language forbidden any of its officials, from having any interest in the expenditure of money on the part of the corporation, other than fixed compensation, and has made that provision effective by the recovery of all sums of money or other things he might receive contrary to such provisions. Wright will be presumed to have had knowledge of that statute, and he therefore made contracts with the village at his peril.
 

 Though there' is no finding of fraud or unreasonable profits, Wright’s conduct is at least subject to
 
 *473
 
 criticism. Two of the exhibits will illustrate this point. On May 15, 1924, he executed a certificate in the following language:
 

 “This is to certify that B. T. Wright is entitled to a payment of $275.30, same being for work in connection with South Broadway walks grading, as follows: (Here follows itemized account of labor and materials furnished.)
 

 “ [Signed] B. T. Wright, Village Engineer.”
 

 On September 4, 1924, he issued a similar certificate for work and materials in connection with the McKinley avenue sewer. While it is true that in the majority of instances the inspections were made by members of council, some of these members were during the same period, during the same time, employed by him. Clearly, there is not that adversary and impartial supervision and inspection of the quality and quantity of materials furnished, neither can it be said that there is the same assurance of fair dealing, that the city might justly feel if a thoroughly disinterested party were making the inspections. All these matters relate only to the policy of the statute. The statute is clear and renders all such transactions illegal without regard to the honesty of their execution. The statute names an engineer as an officer. Whether so named or not, the duties discharged by him were of that character to constitute him an officer. His conduct comes clearly within the range of the inhibitions of Section 3808.
 

 The judgments of the lower courts must therefore be affirmed.
 

 Judgment affirmed.
 

 Hat, Allen, Kinkade and Jones, JJ., concur.