## THOMAS v EUCLID (city)

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided Nov 2, 1931

White & Brewer, Cleveland, for plaintiff in error.

Stanley L. Orr, Cleveland, for defendant in error.

VICKERY, J.

I think the learned counsel for the plaintiff has misconstrued the decision of the Supreme Court in this **Wright** case. That was a suit brought by Clark and others as taxpayers against Wright, he being an officer of the village of Bedford and having made contracts in which he and other members and officers of the Village of Bedford were interested. The fact is that he let contracts to himself as engineer and employed councilmen and other officers of the village to carry out such contracts, all of which was in violation of many statutes of the state of Ohio. In that action a recovery was had in the interest of the taxpayers, which this court sustained, and was affirmed by the Supreme Court in the decision above referred to. The case was again before this court in a suit in mandamus, **State ex rel Thompson, Hine & Flory, a Partnership, v Council of the Village of Bedford, 33 O. L. R., 136, 37 Oh Ap 265,** later affirmed by the Supreme Court,

(123 Oh St, 413), compelling payment of compensation due attorneys for recovering money wrongfully paid under the contracts to Wright. So this member of the court is perfectly familiar with the whole litigation.

Now the only question that the court had to determine in that lawsuit was whether Wright was an officer of the village of Bedford. That he was such officer there can be no question, and in a measure it was by virtue of the sections of the statutes above referred to and, that being established, it did not make a particle of difference whether his power came from the statute, that is, whether the statute was self-operating and made him an officer, or whether it was necessary for the council of the village of Bedford to act under that statute, which it did, in creating the office and to employ him as such officer. In either event he was an officer and, therefore, he had wrongfully made a contract with himself and had employed other members of the corporation who could not legally benefit financially from a contract with the corporation. That was the point to be decided by the Supreme Court.

Sec 4364 and 4366 GC provide as follows:

"Sec 4364. General duties. Under the direction of council, the street commissioner, or an engineer, when one is so provided by council, shall supervise the improvement and repair of streets, avenues, alleys, lands, lanes, squares, wards, landings, market houses, bridges, viaducts, sidewalks, sewers, drains, ditches, culverts, ship channels, streams, and water courses. Such commissioner or engineer shall also supervise the lighting, sprinkling and cleaning of all public places, and shall perform such other duties consistent with the nature of his office as council may require."

"Sec 4366. Duties of various officers: Compensation. In each municipal corporation having a fire engineer, civil engineer or superintendent of markets such officers shall each perform the duties prescribed by this title, and such other duties not incompatible with the nature of his office as the council by ordinance requires, and shall receive for his services such compensation by fees, salary or both as is provided by ordinance."

It will at once be observed that the statute authorizes or provides for an engineer and other officers mentioned therein when the council by ordinance have so provided such office, which would clearly show that the statute clearly is inoperative and in-

effective until the council has exercised the power conferred upon it by this statute. In other words, the passing of the statute by the legislature did not create an office of engineer, confining our remarks to an engineer only, but only authorized the council to create such an office and to appoint the incumbent, and where city or village councils have not acted there is no engineer. Hence, it cannot be said that an engineer appointed under this section after the office has been created and the appointment made by council, occupies an office created only by statute. He is an officer by virtue of the appointment by the council under the authority conferred upon it by the statute, and it is a distinction very important in this lawsuit.

Now, of course, under the authority of Wright v Clark, supra, the engineer is an officer and in a sense it is true that he is so by virtue of the sections referred to in the syllabus, but the sections referred to in the syllabus would not alone make him an officer. As already stated they are not self-operating; action by the council is required, and it is the council that creates the office, and in the Wright case the council of Bedford created the office under the statute and appointed Mr. Wright the engineer, and the ordinance was almost exactly similar to the one in question, and while the syllabus of the Supreme Court is the law of the case, if it does not apply to another case that is not on all fours with it, it does not bind the Supreme Court or any other court in cases differing from it.

Now as already stated all the court had to decide in the Wright case was that Wright was an "officer", and the source from which he derived his power as an officer, whether ordinance or statute, was unimportant, because as an officer under either theory, he had violated his official duties and had violated the statute. The point and the importance lies in this: that if Thomas was an officer, he was entitled to the usufructs of the office, but the power that created the office could likewise repeal the law which created it, and when it was repealed there would be no basis upon which an officer could perform any duties, inasmuch as they were taken away by repeal of the law creating the office. This familiar doctrine runs through our entire judicial system from its very inception down to the present moment. It is best exemplified, perhaps, by quoting a very historic case which is known in the legal literature as John Adams Midnight Judges case. When the Republicans, as they were then called under Thomas Jefferson, had succeeded in arresting the

control of the government from the Federalists, who up to that time had control of at least the executive department of the government, John Adams and the Federalists thought they would make soft places for a lot of the adherents of the Federalists, and so they passed an Act of Congress creating a circuit court, and the last act that John Adams did was to fill those positions by appointing his friends and the friends of the Federalist party to the various offices thus created. This offended the Jeffersonian Republicans, now called Democrats, and when Jefferson came into power with a Congress that agreed with him, they repealed the law creating this circuit court, and the John Adams Midnight Judges were all, to use the vernacular, "thrown out of office."

Ever since that time and before, it has been well recognized that one can always get rid of an officer by repealing the law that created the office, and while one cannot interfere with a man's office, nor his right to the usufructs of the office, to-wit, the salary attached to it, unless he is impeached and removed from office or otherwise removed in accordance with law established for that purpose, the office itself can always be abolished.

Now that brings us to the nub of this lawsuit. It is claimed by learned counsel in argument that Thomas held an office, and that that office was created by the statute and therefore the council having appointed Thomas to fill that office for a specified time as they might, the council could not dispense with his services or refuse to pay his salary by attempting to abolish that office, inasmuch as he held his office under the state staute, and he quotes the second syllabus of the **Wright** case as authority for this. I think that syllabus can be read in the light of what we have already said upon that proposition, that the proposition as to **where** this man Wright got his authority was not involved in that suit. He was an officer, whether appointed by statute or by the council resolution.

Now from what we have already said and referring to the underscored words in the section above quoted, "or an engineer, when one is so provided by council," plainly indicates that the creative power of the office has been delegated by the Legislature to the council of the various cities and villages; that there is no such position until the council has created it.

Now that being so, if the office is created by the municipality, by the council, the same authority and power that create that office can, when the council sees fit, abolish the office. That is what the record shows the

council did in the instant case. The record shows that the situation in Euclid had entirely changed. Euclid had ceased to be a village and had become a city under the census of 1930, and the council in revamping and revising, in the interests of economy, saw fit to repeal this ordinance creating the office of chief engineer and transferred the duties to another department. So the council, in the resolution or ordiance that created the office, having appointed Thomas for two years, when, at the end of one year they saw fit to repeal it, were clearly within their powers. Consequently Mr. Thomas, however chagrined he might be, was a man without an occupation. Like Othello, his "occupation's gone."

The learned counsel seems to think that the office was created by the statute, and that therefore the council could not discharge him during the term for which he had been appointed and the theory of his lawsuit must be based upon that proposition, because he plainly admits that the services were not performed. Even if he were such an officer and wrongfully discharged from that office, he would not be entitled to the emoluments of the office until he had been replaced by a writ of mandamus or some other order of the courts to restore him to his former position. Probably if the theory of the learned counsel is correct that the office was created by statute, and the council had no right to destroy the office, then he would not be compelled to labor to earn his money provided that he had been restored to his position by an act of a court that had jurisdiction and power. In that event he would be entitled to recover the emoluments of the office, but that must have been determined first. He cannot maintain an action on a contract for services which he had not rendered. If this employment was a contract, then the plaintiff could not recover under his present form of action because he seeks to recover not damages for a breach of contract, but the salary earned, to-wit, Five hundred dollars a month for two months. One cannot recover for services earned on a contract, unless one performs the services and earns the money. His remedy would be, if it was on a contract, to sue for breach of the contract and in that event the recovery might be the same as his salary would be, but he surely cannot maintain an action for services rendered when he did not render the services.

So we can come to this conclusion and this conclusion only, that plaintiff's suit was to recover on a contract of employment for a period of two years, and he brought

his suit to recover for the contract price. He cannot recover because he did not perform the services. If he were an officer by virtue of the ordinance of the city of Euclid creating the office and appointing him as engineer to such office, then the same power which created that office could abolish the office by ordinance and apparently from the record that is what the council of the city of Euclid did in ordiance No. 6030.

We think that this is a proper analysis and understanding of the statutes and of the decision of the Supreme Court in the Wright case, **supra**.

For these reasons we think the trial court was right in finding against the plaintiff in the court below, and inasmuch as there was no error in the findings, we can do nothing else than to affirm the judgment.

The judgment will be affirmed.

LEVINE, PJ, and WEYGANDT, J, concur.