LEBER et al., Appellees and Cross–Appellants,

v.

BUCKEYE UNION INSURANCE COMPANY, Appellant and Cross–Appellee, et al.

[Cite as *Leber v. Buckeye Union Ins. Co.* (1997), 125 Ohio App.3d 321.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–96–014.

Decided July 18, 1997.

*Dennis E. Murray, Sr.,* for appellees and cross-appellants.

*Richard M. Markus* and *Laura F. Kenney,* for appellant and cross-appellee.

*Per Curiam.*

This is a coda to protracted and voluminous litigation stemming from a 1979 accident in which Eugene A. Leber was shot and permanently disabled by Erie County Deputy Sheriff Steven A. Smith after a motor vehicle chase, when Smith, as he approached Leber's vehicle, slipped on ice and his gun discharged. The tragedy spawned litigation in the federal court and the Erie County Court of Common Pleas, with appeals to this court and the Ohio Supreme Court.

In this appeal the two issues are (1) attorney fees ordered paid by the Erie County Court of Common Pleas, upon conclusion of the merit appeal to the Ohio Supreme Court on December 9, 1994, and (2) the method of calculation of interest on judgments.

On June 27, 1995, appellees/cross-appellants, Leber and his parents, June and Richard Leber (collectively "appellees"), filed in the trial court a "Petition/Application/Motion For (1) Reasonable Attorney Fees and Litigation Expenses; and (2) Compound or Annual Interest" on the September 4, 1987 judgment. A hearing was held and the trial court thereupon entered a judgment, supported by separate findings of fact and conclusions of law. The trial court granted judgment in favor of appellees against appellant/cross-appellee, Buckeye Union Insurance Company ("Buckeye"), in "the sum of $10,478,139.68 as and for attorney fees" and taxed $66,819.39 in litigation expenses against Buckeye. The trial court denied appellees' request for compound or annual interest.

Buckeye appeals from this judgment, setting forth the following three assignments of error:

"Assignment of Error No. 1:

"The trial court erred by awarding attorney fees after the parties exhausted all appeals from the trial court's final judgment (11/9/95 Judgment).

"Assignment of Error No. 2:

"The trial court erred by awarding attorney fees against a nongovernmental defendant in a spurious taxpayer's action (11/9/95 Judgment).

"Assignment of Error No. 3:

"The trial court erred and abused its discretion by awarding egregiously excessive attorney fees (11/9/95 Judgment)."

In their challenge to the overruling of the request for a different method of determining interest, appellees assign a single assignment of error:

"Having concluded: (1) that the unrebutted evidence supported plaintiffs' entitlement to compound or, alternatively, annual interest on the September 4, 1987 judgment; and (2) that, equitably, plaintiffs should receive compound, or at

least annual, interest on that judgment—the trial court committed reversible error by not entering such an award on the sole basis that *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638 [635 N.E.2d 331], and *Hogg v. Zanesville Canal & Mfg. Co.* (1832), 5 Ohio 410 [1832 WL 26], do not hold that compound or, alternatively, annual interest should be allowed on unpaid judgments."

## PROCEDURAL HISTORY

At the time of the 1979 accident, the Board of Erie County Commissioners carried a comprehensive general liability insurance policy with Buckeye Union Insurance Company ("Buckeye"). The Erie County Sheriff's Department carried a liability insurance policy with American Home Assurance Company ("American Home").

Four separate lawsuits resulted from the 1979 accident.[1] In June 1983, Eugene Leber and his parents, June and Richard Leber, filed a personal injury action in Erie County Court of Common Pleas case No. 45270, captioned *Leber v. Smith* ("*Leber 1*"), against Steven A. Smith, individually and as a deputy of the Erie County Sheriff's Department; John Magnuson, Erie County Sheriff as successor to Harold Gladwell, Erie County Sheriff; Wanda June Gladwell, administrator of the estate of Harold Gladwell; and the board and the Erie County Commissioners individually. The trial court held that the board was liable for the negligence of the sheriff or his deputies under the doctrine of *respondeat superior*. Settlement negotiations began, but no settlement resulted. The board's position was that settlement could not be discussed until Buckeye offered to participate and contribute to a settlement. Buckeye made no settlement offer. A trial resulted in a jury verdict of $10,240,000 for the Lebers against all of the defendants. The jury found the following percentages of total negligence: Smith, thirty-five; Erie County Sheriff, sixty-five; and Leber, none. On August 7, 1984, the trial court entered judgment for the Lebers in the reduced amount of $10,150,000. The Lebers appealed that judgment to this court, arguing that the trial court erred in reducing the jury's award.

Following the verdict in *Leber 1*, on August 20, 1984, the Lebers brought a taxpayer's action in Erie County Court of Common Pleas, case No. 45896, captioned *State ex rel. Leber v. Am. Home Assurance*.[2] In that case, the Lebers

---

1. The Ohio Supreme Court has previously identified this stream of litigation as *Leber 1* and *Leber 2*, noting that *Leber 1* "was a personal injury suit brought against various officials of Erie County," and *Leber 2* "was a suit brought against insurance companies alleging, among other things, that the insurers had acted in bad faith when they defended the county officials in *Leber 1*." *Leber v. Smith* (1994), 70 Ohio St.3d 548, 548, 639 N.E.2d 1159, 1160.

2. Also sued in *Leber 2* was the law firm of Eastman & Smith, which American Home assigned to defend the sheriff's department, and attorney Raymond N. Watts, who Buckeye assigned to

alleged that the insurance companies failed to provide an adequate defense and acted in bad faith in failing to negotiate a settlement in *Leber 1*.

On September 18, 1984, after the judgment in *Leber 1* but before the appeal was decided, the Lebers filed a supplemental petition in that case, pursuant to R.C. 3929.06,[3] joining as defendants American Home, Buckeye, David M. Jones, John D. Wiley, Jr ., and Eastman & Smith. In the supplemental petition, the Lebers claimed that Buckeye acted in bad faith in failing to settle the action against the original defendants in *Leber 1* and that the Buckeye policy limit exceeded $1,000,000. Similar claims were made against American Home. As to Jones, Wiley, and Eastman & Smith, the Lebers asserted claims of legal malpractice. Buckeye, in its answer, filed a third-party complaint against Raymond N. Watts, an attorney employed by Buckeye to defend the interests of the insureds in *Leber I*. The Lebers then asserted claims of legal malpractice against Watts.

On October 10, 1984, the board filed a declaratory judgment action against Buckeye in Erie County Court of Common Pleas, case No. 46067, captioned *Bd. of Erie Cty. Cmmrs. v. Buckeye Union*. In that case, the board sought a determination of the parties' rights and obligations under the Buckeye policy, in particular, a declaration whether Buckeye was legally obligated to defend the board in case No. 45270 and the amount of insurance coverage provided. The Lebers later intervened in this declaratory judgment action.

On March 19, 1986, while the *Leber 1* appeal was pending in this court, the Lebers and all of the defendants in that case entered into a settlement agreement

---

defend the board. Appellees alleged that Eastman & Smith had committed legal malpractice and that Watts breached the fiduciary duty owed to his client, the board. The jury in *Leber 2* returned a verdict in favor of Eastman & Smith and Watts.

3. R.C. 3929.06, regulating insurance money applied to judgments, states:

"Upon the recovery of a final judgment against any firm, person, or corporation by any person, including administrators and executors, for loss or damage on account of bodily injury or death, for loss or damage to tangible or intangible property of any person, firm, or corporation, for loss or damage on account of loss or damage to tangible or intangible property of any person, firm, or corporation, or for loss or damage to a person on account of bodily injury to one's spouse or minor child or children, if the defendant in such action was insured against loss or damage at the time when the rights of action arose, the judgment creditor or the successor in interest is entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant applied to the satisfaction of the judgment. If the judgment is not satisfied within thirty days after it is rendered, the judgment creditor or the successor in interest, to reach and apply the insurance money to the satisfaction of the judgment, may file a supplemental petition in the action in which said judgment was rendered, in which the insurer is made new party defendant in said action, and whereon service of summons upon the insurer shall be made and returned as in the commencement of an action at law. Thereafter the action shall proceed as to the insurer as in an original action."

("*Leber 1* settlement agreement"), which provided that the board would pay appellees $2 million over a five-year period. The board, Smith and the sheriff assigned all of their rights against their insurance carriers and attorneys to appellees.[4] The agreement required appellees to repay the board in the event they recovered money from the insurance carriers.

In light of the settlement agreement, on June 12, 1986, at the request of the parties involved, this court dismissed the *Leber 1* appeal. The supplemental petition, also captioned *Leber v. Smith,* however, remained pending in the Erie County Court of Common Pleas, case No. 45270.

On January 23, 1987, a motion to consolidate was granted, and the Erie County Court of Common Pleas consolidated *Leber v. Smith,* No. 45270 (the supplemental petition), *State ex rel. Leber v. Am. Home Assurance,* No. 45896 (the taxpayer's action) and *Bd. of Erie Cty. Commrs. v. Buckeye Union,* No. 46067 (the declaratory judgment action), under the caption *Leber v. Smith,* No. 45270 (*Leber 2* ).

On December 18, 1984, Smith filed a complaint in the Erie County Court of Common Pleas, case No. 46160, captioned *Smith v. Jones,* against American Home, Buckeye, and Eastman & Smith, as well as named attorneys Jones and Wiley from that law firm. In his complaint, Smith alleged that he was a third-party beneficiary under the American Home and Buckeye insurance policies of the sheriff and the board, that the named attorneys from Eastman and Smith had acted as agents for the two insurance companies in *Leber 1,* and that the attorneys and insurance companies had essentially disregarded his best interest in defending him in that case. On April 6, 1987, Buckeye filed a motion to compel joinder of the Lebers, which was granted by the trial court, and Smith filed a supplemental and amended complaint joining the Lebers as new party plaintiffs, pursuant to the assignments set forth in the *Leber 1* settlement agreement.[5] In a

---

4. The *Leber 1* settlement agreement provided:
   "Erie County agrees to assign to the Lebers, and does hereby assign to the Lebers, all right, title and interest that it has or may have, on its own behalf and on behalf of all of its employees, agents and agencies, (all past and present officials and employees of Erie County, including Steven A. Smith), to the fullest extent possible, all causes of action, all chooses in action and all rights that it has or may have against its insurance companies, American Home Assurance Company and The Buckeye Union Insurance Company, their agents and employees, subsidiaries and affiliates, as well as any independent insurance agency or agencies, their agents or employees, including, but not limited to, the attorneys for such insurance companies, insurance agency or agencies or the agents or employees of such insurance companies or insurance agencies."

5. Buckeye's motion to consolidate *Smith v. Jones* with the consolidated *Leber 2* cases was denied.

December 8, 1987 judgment entry, the trial court granted summary judgment to Buckeye and Watts.

On June 29, 1987, the consolidated *Leber 2* case proceeded to trial with the declaratory judgment claims submitted to the court and the remaining claims submitted to the jury. During trial, appellees agreed to dismiss their actions against American Home for $2 million. In the declaratory judgment action, the trial court found that both Smith and the county sheriff were insureds under the Buckeye policy and that $2 million in coverage was available. The jury returned a verdict in favor of appellees on their bad faith claim against Buckeye. As a result of the verdict, the trial court entered a judgment for $13,336,232.80 against Buckeye.[6]

On appeal, this court reversed in part, finding that there was no coverage under the Buckeye policy. The Supreme Court, in the second appearance before that court,[7] reversed this court on the questions of coverage under the Buckeye policy, holding that the trial court correctly "concluded that the Buckeye Union policy provided coverage for the negligent conduct of Deputy Smith and the negligent training of Smith conducted by members of the Sheriff's Department." *Leber*, 70 Ohio St.3d at 553, 639 N.E.2d at 1163. The Ohio Supreme Court also decided that the trial court correctly bifurcated the declaratory judgment action, with the trial court interpreting the insurance contract and the jury determining the factual issues of malice, fraud, or deceit. *Id.*

The following are relevant portions of prior judgments and pleadings:

A. September 4, 1987, judgment of the Erie County Common Pleas Court:

"1. Judgment is rendered in favor of plaintiffs and against defendant * * * Buckeye in the amount of [$13,336,232.80]. * * * [I]nterest at ten (10%) per annum to date hereof * * *. [A]fter deducting the $2 million set off [paid by American Home].

"* * *

"6. Costs are hereby taxed to defendant, the Buckeye Union Insurance Company, in an amount, including reasonable attorney fees pursuant to Ohio Revised Code Section 309.13, to be determined and computed after any appeals.

---

**6.** This amount was calculated by adding the *Leber 1* $10,150,000 judgment to $3,064,465.74 in interest accumulating from the date that *Leber 1* was decided and $2,121,767.06 in prejudgment interest accruing from July 5, 1982, to August 7, 1984, and then subtracting the $2 million settlement paid to appellees by American Home.

**7.** In *Leber v. Smith* (1989), 46 Ohio St.3d 702, 545 N.E.2d 1277, the Ohio Supreme Court remanded the case to this court to determine the merits of five assignments of error that this court had determined to be moot and declined to decide.

"7. There is no just reason for delay."

B. March 3, 1989, opinion of the Erie County Court of Appeals upon direct appeal from the September 14, 1987, judgment:

Buckeye's Assignment of Error XIII provided:

"The trial court erred in awarding plaintiffs their costs and attorney fees under R.C. 309.13."

This court stated:

"In their last assignment of error, Buckeye Union argues that the trial court erred in awarding the Lebers costs and attorney fees under R.C. 309.13. This court has already determined that Buckeye Union did not act in bad faith. Hence, the Lebers have simply not prevailed. It follows that the award of attorneys fees was error. Buckeye Union's thirteenth and last assignment of error is found well-taken." *Leber v. Smith* (Mar. 3, 1989), Erie App. No. E–87–43, unreported, at 18, 1989 WL 18141.

C. Proceedings in the Ohio Supreme Court. *Leber,* 70 Ohio St.3d at 553, 639 N.E.2d at 1163:

In the sharply divided opinion, the judgment of the Supreme Court was silent upon the issue of attorney fees. The court concluded its opinion as follows:

"Because the court of appeals erred in the ways discussed in this opinion, we reverse the judgment of the court of appeals, in part, and reinstate all of the trial court's judgments. The findings of the jury should not be disturbed." *Leber,* 70 Ohio St.3d at 554, 639 N.E.2d at 1163.

In its judgment entry, the Supreme Court stated:

"[T]he judgment of the court of appeals is affirmed in part, reversed in part, and all of the trial court's judgments are reinstated consistent with the opinion rendered herein.

"It is further ordered that the appellants recover from the appellee, Buckeye Union Insurance Company, their costs herein expended; and that a mandate be sent to the Court of Common Pleas for Erie County to carry this judgment into execution * * *."

The mandate from the Supreme Court stated:

"To the Honorable Court of Common Pleas * * *:

"The Supreme Court of Ohio commands you to proceed without delay to carry the following judgment in this cause into execution:

"Judgment of the court of appeals is affirmed in part, reversed in part and all of the trial court's judgments are reinstated consistent with the opinion rendered herein."

D. Plaintiffs' petition/application/motion for fees and interest.

The trial court heard the motion and executed separate findings of fact and conclusions of law, together with a judgment for $10,478,139.64 against Buckeye, finding that sum "as the allowed attorney fees * * * fair and reasonable." The trial court denied appellees' request for compound or annual interest and taxed litigation expenses to Buckeye. This appeal and cross-appeal are from that judgment.

## ASSIGNMENT OF ERROR I

In its first assignment of error, Buckeye argues that the trial court had no jurisdiction to act upon appellees' motion for attorney fees. Simply, the argument is that because the trial court entered a final appealable order in September 1987, which this court reversed but did not remand to the trial court, and the Supreme Court affirmed in part and reversed in part and did not remand the case either to the court of appeals or the trial court, the litigation was finished and the trial court had no power to act. The matter is either *res judicata* or the claim is barred by the doctrine of the law of the case. Buckeye buttresses this argument by noting that, having lost in the court of appeals, appellees never preserved the issue of attorney fees in their appeal to the Supreme Court. Nor did appellees request the Supreme Court to remand the matter for the purpose of assessing fees.

Buckeye also argues that even if the reservation language in the original judgment, coupled with the statement "no just reason for delay," somehow preserved jurisdiction to rule on fees, that authority is strictly limited to reasonable attorney fees pursuant to R.C. 309.13.

Appellees counter that the trial court simply followed the mandate of the Supreme Court. Appellees also argue that the trial court correctly interpreted its own judgment when it stated:

"This Court's judgment of September 4, 1987 mentioned R.C. 309.13 as but one nonexclusive basis for such an award. This Court expressly reserved a determination as to the amount of such fees pending the exhaustion of any and all appeals."

Thus, appellees contend that the trial court correctly based an award on several facts: (1) R.C. 309.13, (2) jury's finding of bad faith and actual malice against Buckeye, and (3) appellees' successful pursuit of the declaratory judgment action against Buckeye.

■  Consistent with the prosecution and defense of this cause from its inception, the parties have supplied the court with a plethora of citations, purportedly supporting their divergent perceptions of the legal status of the matter.  This court concludes, from a plain reading of the original judgment of the trial court and the judgment of the Supreme Court, that in its execution of the judgment of the Supreme Court which reinstated the judgment of the trial court, the trial court did, indeed, have jurisdiction to execute all of the provisions of that judgment.

■  However, this court concludes that the trial court erred as a matter of law in interpreting the plain language of its judgment to authorize fees beyond those in that judgment.

■  The Ohio Supreme Court adheres to the American rule, which prohibits the prevailing party's recovery of attorney fees as part of the costs of civil litigation except when there is statutory authority (or unless punitive damages are awarded, a circumstance not applicable in this litigation).  *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179–181, 75 O.O.2d 224, 225–226, 347 N.E.2d 527, 528–530.

The trial court reserved authority to assess fees as related solely to the taxpayer's action.  However, the trial court erred in concluding that the entitlement to fees reached back to the commencement of the tort proceedings and included all services rendered on behalf of the clients by the attorney for appellees.  The trial court abused its discretion in concluding that the guidepost for determining fees was the contingent fee agreement executed *after* the cases were tried, and in determining that the several consolidated cases were so interrelated that the legal services performed for one included the legal services for all.  This is more dramatically true with respect to the action first prosecuted in the federal court—an issue over which the trial court clearly has no power or authority.

Therefore, this court concludes that although the trial court retained jurisdiction to award attorney fees as prescribed in R.C. 309.13, it erred in exceeding that jurisdiction.

Accordingly, Buckeye's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

In its second assignment of error, Buckeye asserts that appellees are not statutorily eligible to recover legal fees for several reasons:  that the claim was for appellees' own private benefit, not the benefit of the county;  that appellees failed to prove that the condition precedent to a taxpayer action, *i.e.* written demand and failure or refusal of the prosecutor to act, was met;  that the

taxpayer's action was redundant; that recovery was had by appellees independent of the taxpayer action; and that appellees may not recover from a nongovernmental defendant instead of the government they purportedly benefited. This court finds this assignment of error well taken on several of these grounds.

In regard to Buckeye's argument regarding the condition precedent to a taxpayer's action, this court concludes that Buckeye waived any objection to the condition precedent of written demand of the prosecutor and denial, by failing to pursue that claim throughout the trial and appellate review process. The statutory requirements of written demand and denial are jurisdictional and procedural prerequisites to a R.C. 309.13 taxpayer's action. *U.S. Corrections Corp. v. Ohio Dept. Indus. Relations* (1995), 73 Ohio St.3d 210, 217, 652 N.E.2d 766, 772–773.

In regard to Buckeye's argument that the taxpayer's action was redundant, this court concludes that the taxpayer action was redundant. The bad faith claim asserted in the taxpayer's action was also asserted in the supplemental pleading in case No. 45270 (the original *Leber I* case) and in the county's declaratory judgment action, in which appellees intervened.

In regard to Buckeye's argument that the taxpayer's action was not brought for the benefit of the county, this court finds merit in this argument. Basic to this court's resolution of this argument is an analysis of the effect of the assignment from Erie County to the Lebers in the *Leber I* settlement agreement on the Lebers' taxpayers' action.

Legally, an assignment is a transfer of property or of some right or interest from one person to another, which causes to vest in another his or her right of property or interest in property. *Aetna Cas. & Sur. Co. v. Hensgen* (1970), 22 Ohio St.2d 83, 51 O.O.2d 106, 258 N.E.2d 237, paragraph three of the syllabus. An unqualified assignment transfers to the assignee all the interest of the assignor in and to the thing assigned. *Pancoast v. Ruffin* (1824), 1 Ohio 381, 1824 WL 23. As a general rule, an assignee "stands in the shoes of the assignor * * * and succeeds to all the *rights and remedies* of the latter." *Inter Ins. Exchange v. Wagstaff* (1945), 144 Ohio St. 457, 30 O.O. 44, 59 N.E.2d 373.

Pursuant to the *Leber I* settlement agreement, Erie County assigned to the Lebers "all right, title and interest that it has or may have, * * * all causes of action, all choses in action and all rights that it has or may have against its insurance companies." It is permissible to assign a chose in action. *Crawford v. Chapman* (1848), 17 Ohio 449, 1848 WL 126, 6 Ohio Jurisprudence 3d (1996) 46, Assignments, Section 8. Thus, any bad faith claim that Erie County had against Buckeye, a chose in action, was assigned to the Lebers. By the assignment from

Erie County to the Lebers, the latter was the real party in interest, and, as such, was the only person who could have recovered on the bad faith claim. An assignee of a chose in action is considered to be its legal holder; the title is not a mere equitable title but is a legal title.

Thus, pursuant to the *Leber I* settlement agreement and the assignment from Erie County to the Lebers of "all right, title and interest that it has or may have, * * * all causes of action, all choses in action * * * against its insurance companies," Lebers' taxpayers' action "on behalf of and for the benefit of Erie County" filed prior to the settlement was no longer "on behalf of and for the benefit of Erie County" but on behalf of and for the benefit of the Lebers. Therefore, it was no longer a taxpayer's action. This conclusion follows logically from an analysis of the purpose of a taxpayer's action.

The purpose of a taxpayer's action is *not* to protect a private right, but rather the result to be accomplished must benefit the taxing district. *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, paragraph three of the syllabus; *Columbus ex rel. Willits v. Cremean* (1971), 27 Ohio App.2d 137, 149, 56 O.O.2d 310, 316–317, 273 N.E.2d 324, 331–332. Thus, an action cannot be maintained in the name of a taxpayer, where it is brought for the taxpayer's individual benefit rather than for the benefit and welfare of taxpayers generally. 88 Ohio Jurisprudence 3d (1989) 8–9, Taxpayers' Actions, Section 3. As noted by the court in *Columbus ex rel. Willits v. Cremean*, 27 Ohio App.2d at 149, 56 O.O.2d at 317, 273 N.E.2d at 331:

"A taxpayer brings an action on 'behalf of a municipality.' A taxpayer's right to bring an action is conferred by statute * * *. The taxpayer brings the action in a public capacity. His interest in the result to be accomplished is the same as that of all of the other taxpayers within the taxing district, or area affected by the misapplication of funds, abuse of corporate powers, or involvement in an illegal contract by the officers acting for the area."

Therefore, following the assignment from Erie County to the Lebers of "all right, title and interest that it has or may have, * * * all causes of action, all choses in action * * * against its insurance companies," the Lebers' taxpayer's action was no longer a taxpayer's action, but rather an action brought for the Lebers' own benefit.

Although the Lebers argue that the benefit to the county from the "taxpayer's action" exceeded $23 million, the affidavit of one of the attorneys for the Lebers demonstrates that the county received $2,088,000, which represents the repayment of $2 million, plus interest, paid to the Lebers as a result of the *Leber I* settlement agreement. The repayment of $2 million was required as a condition of the *Leber I* settlement agreement, not as a result of a taxpayer's action.[8]

---

**8.** In this affidavit, the following figures are set forth:

■ This court also finds merit in Buckeye's argument that R.C. 309.13 does not provide for recovery of attorney fees from a nongovernmental entity. Neither the statute nor the case law provides for such a recovery.

In *Brauer v. Cleveland* (1966), 7 Ohio St.2d 94, 96, 36 O.O.2d 80, 81, 218 N.E.2d 599, 601, the Ohio Supreme Court, in discussing the circumstances under which attorney fees could be awarded, stated:

"The statute which allows fees directs the court to make such order as the equity of the case demands. It would be inequitable to pay the plaintiff's counsel *with public funds* in a case in which the public obtains no benefit." (Emphasis added .)

In *State ex rel. Yontz v. West* (1939), 135 Ohio St. 589, 14 O.O. 527, 21 N.E.2d 987, syllabus, the Ohio Supreme Court held:

"In a successfully prosecuted action by a taxpayer to compel the registrar of motor vehicles of the state of Ohio to collect and retain the tax duly imposed on a certain class of vehicles, *the trial court is vested with the authority to award from tax funds thus realized* a reasonable fee to the attorney for the taxpayer. (*Council of Village of Bedford v. State, ex rel. Thompson, Hine & Flory,* 123 Ohio St. 413 [175 N.E. 607], approved and followed.)" (Emphasis added.)

In *Council of Village of Bedford v. State ex rel. Thompson, Hine & Flory* (1931), 123 Ohio St. 413, 422, 175 N.E. 607, 610, the issue for the Ohio Supreme Court was whether an award of attorney fees was appropriate in the prior taxpayers' action of *Wright v. Clark* (1928), 119 Ohio St. 462, 164 N.E. 512. In *Wright,* two taxpayers brought suit on behalf of the village of Bedford to recover money paid to the village engineer, Wright. While its engineer, Wright had entered into contracts with the village for construction and materials in violation of a statute prohibiting a corporate officer from having any interest in the expenditure of money other than his fixed compensation. The court stated in *Bedford:*

"In the case of *Wright v. Clark,* 119 Ohio St. 462, 164 N.E. 512, where the case involved the present inquiry, *no judgment for attorney fees was taxed against Wright,* nor allowed as a part of the court costs, but the amount was to be deducted from the fund created as a part of the expenses incident to the creation of the same." (Emphasis added.)

---

| 1. | December 16, 1994 wire transfer from Buckeye: | $23,044,279.28 |
|----|-----------------------------------------------|----------------|
| 2. | Amount paid to Erie County: | 2,088,000.00 |
| 3. | Amount paid Murray & Murray: | 10,478,139.24 |
| 4. | Amount retained by Gene Leber: | 10,478,139.24 |

In *Fairbanks, Morse & Co. v. Hill* (1934), 48 Ohio App. 418, 420–421, 1 O.O. 449, 450, 194 N.E. 397, 398, the court stated:

"[T]he intent of the framers of this legislation was to safeguard the taxpayers of a municipality from corruption, or from laxity on the part of its officials. *Such an action as this, brought for the benefit of the municipality, may well imply an obligation on the part of the municipality to pay the fees and expenses incurred by the individual taxpayer* who takes upon himself the burden which the duly constituted officials should have assumed. With a sense of such an obligation on the part of a municipality, this statute was undoubtedly passed.

"Hill in this action, in fact, appeared on behalf of, and in the interest of, the citizens of the village of Brewster. He did not in any sense represent Fairbanks, Morse & Company. To it he was in every sense adverse. *We know of no authority for taxing fees against such an adverse party. This statute certainly does not give such authority.*" (Emphasis added.)

For the above discussed reasons, appellees are not entitled to attorney fees pursuant to R.C. 309.13.

Accordingly, Buckeye's second assignment of error is sustained.

### ASSIGNMENT OF ERROR III

In its third assignment of error, Buckeye argues that the trial court erred in awarding egregiously excessive attorney fees. Based upon the resolution of Buckeye's second assignment of error, this court finds merit in this assignment of error.

Accordingly, Buckeye's third assignment of error is sustained.

### APPELLEES' CROSS–ASSIGNMENT OF ERROR

In their cross-assignment of error, the Lebers seek to expand the historic, standard computation method for interest on judgments. The gist of their argument is that Buckeye had the use of the money during the time it was not deposited or paid over, and in equity and good conscience they should not be able to profit by earning compound interest of the reserved money, while paying out only the basic ten percent.

This court is not persuaded by their argument. This court will not expand the historic practice and the holdings in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, and cases cited. The interest ruling of the trial court was consistent with the exercise of that court's discretion.

Accordingly, appellees' cross-assignment of error is found not well taken.

For the reasons stated herein the judgment of the Erie County Court of Common Pleas is reversed and vacated as to the award of attorney fees and affirmed as to the trial court's calculation of interest on the judgment. Appellees are ordered to pay the court costs of this appeal.

*Judgment affirmed in part*
*and reversed in part.*

MILLIGAN, STRAUSBAUGH and JOSEPH E. O'NEILL, JJ., concur.

JOHN R. MILLIGAN, J., retired, of the Fifth Appellate District, DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, and JOSEPH E. O'NEILL, J., retired, of the Seventh Appellate District, sitting by assignment.