DECISION AND JUDGMENT ENTRY
This accelerated appeal from the grant of appellee's motion for summary judgment involves the right of appellant, Robert Symington, to seek uninsured motorist benefits under a policy issued by appellee, Westfield Insurance Company ("Westfield"). Symington asserts the following assignment of error:
THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN
 IT GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, WESTFIELD INSURANCE COMPANY AND DISMISSED THE CLAIM SOUGHT BY PLAINTIFF-APPELLANT ROBERT SYMINGTON AGAINST WESTFIELD INSURANCE COMPANY WITHOUT ALLOWING THE JURY TO DETERMINE ISSUES OF NEGLIGENCE, LIABILITY, AND DAMAGES, IMPROPERLY RELIEVING DEFENDANT-APPELLEE WESTFIELD INSURANCE COMPANY OF ANY POTENTIAL LIABILITY FOR LOSSES SUFFERED BY ITS INSURED, PLAINTIFF-APPELLANT ROBERT SYMINGTON."
The facts underlying this case are undisputed. On August 3, 1995, Symington was injured as the result of a motor vehicle accident allegedly caused by the negligence of Ricky L. McCann. McCann held a policy of motor vehicle liability insurance with the Coronet Insurance Company. At the time of the accident, Symington was employed by Wayne's Mobile Lunches and was driving a motor vehicle owned by his employer. That vehicle was insured by Westfield. However, some of the other vehicles owned by Symington's employer, and used in its business operations, were insured by Midwestern Indemnity Insurance Company ("Midwestern").
Symington commenced an action against McCann in May 1996. During the course of that action, the Coronet Insurance Company was liquidated pursuant to court order. Symington then submitted an uninsured motorist claim to Midwestern; later, Midwestern became a party to Symington's action against McCann. Even though Midwestern became aware of the fact that it owed no contractual obligation to Symington, it subsequently agreed to a settlement. Sometime in 1998, Symington received $9,500 from Midwestern in exchange for the assignment of "his right to collect underinsured motorist benefits against Westfield Insurance Company for the injuries and damages he sustained in the August 3, 1995 accident up to the amount of $9,500.00."
On June 29, 1998, Symington filed the present action, seeking uninsured motorist benefits "in excess of $25,000" from Westfield. Westfield answered and filed a motion pursuant to Civ.R. 17 and Civ.R. 19, to join Midwestern as the real party in interest and as a necessary party. After this motion was granted, Westfield filed its motion for summary judgment. Westfield maintained that it was (1) entitled to summary judgment against Midwestern because Midwestern acted as a "volunteer;" (2) entitled to summary judgment against both Midwestern and Symington because Symington failed to pursue recovery, pursuant to R.C. Chapter 3955, from the Ohio Insurance Guaranty Association; and (3) entitled to summary judgment on Symington's claim because he did not comply with the terms of the Westfield insurance contract by failing to promptly notify Westfield of his claim. The trial court rejected all three of these contentions, finding, in particular, that Westfield failed to offer any competent evidence on this issue.
Westfield then filed a motion for reconsideration, arguing that the assignment of Symington's claim to Midwestern was invalid because, under the terms of the motor vehicle insurance policy issued to Symington's employer, Symington could not transfer his rights and duties under that policy without the written consent of Westfield. The attached affidavit of a Westfield Claims Representative avers that examination of the relevant claims file reveals "no Release, Authorization, Waiver or other documentation wherein Mr. Symington requested, or received, permission from Westfield Insurance Company to assign his claims to uninsured/underinsured motorist benefits under Policy #CWP 3 670 708." Based on this affidavit and pertinent case law, the trial court granted the motion for reconsideration and Westfield's motion for summary judgment, dismissing the claims of both Midwestern and Symington. It expressly adopted its discussion and conclusions reached in its original denial of the motion for summary judgment as to the issues raised in that motion.
Both Symington and Midwestern filed a notice of appeal from the trial court's judgment. However, Midwestern failed to file an appellate brief and is, therefore, dismissed as a party to Appeal No. L-00-1208. See App.R. 18(C). Consequently, we shall not consider or discuss the merits of the trial court's grant of Westfield's motion for summary judgment as it relates to Midwestern or the dismissal, with prejudice, of Midwestern from this case.
In his brief, Symington first argues the exhaustion of insurance sources prior to seeking relief pursuant to R.C. Chapter 3955. This argument is neither material to the determination of the merits of this appeal nor is Symington an aggrieved party as to this particular issue.Ohio Contract Carriers Assn. v. Pub. Util. Comm. (1942), 140 Ohio St. 160, 23 Ohio Op. 369, syllabus ("Appeal lies only on behalf of a party aggrieved by the final order appealed from. Appeals are not allowed for purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant."). The trial court ruled in favor of Symington on this issue and expressly adopted that ruling in granting summary judgment on an entirely separate question.
In his second contention, Symington apparently acknowledges that he failed to provide notice to and obtain written consent from Westfield, as required under the Westfield motor vehicle policy, before assigning his claim for uninsured/underinsured benefits to Midwestern. He contends, nonetheless, that the lack of notice did not prejudice any rights of Westfield because "Westfield has no right of subrogation against the Ohio Insurance Guaranty Association" as set forth in R.C. 3995.01(D)." Again, R.C. Chapter 3955 is not germane to the disposition of this cause. Rather, the issue as it involves Symington is whether an insured's assignment, without the written consent of his insurer as required by the insurance contract, of an uninsured/underinsured motorist claim as part of a settlement agreement is a material breach of the contract sufficient to relieve the insurer of its contractual obligation to the insured.
The standard applicable to this appeal is found in Civ.R. 56(C), which provides that summary judgment is appropriate when the trial court determines that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327. We review the trial court's summary judgment determination de novo. Chapman v. Adia Services, Inc. (1997),116 Ohio App.3d 534, 540.
In order to answer our question, we must first look to the pertinent language of the insurance policy issued to Symington's employer by Westfield. Interpretation of the language in an insurance contract is conducted under the general rules of contract construction and interpretation. Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11. Further, interpretation of an insurance contract is a question of law.Leber v. Smith (1994), 70 Ohio St.3d 548, 553. Thus, if the terms of an insurance contract are clear and unambiguous, a court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 246.
In the present case, the plain and unambiguous language of the Westfield policy subjects "All Coverage Parts" to the following condition:
 "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."
An "assignment" is "a transfer of property or of some right or interest from one person to another, which causes to vest in another, his or her right of property or interest in property. Aetna Cas. Sur. Co. v.Hensgen (1970), 22 Ohio St.2d 83, 258 N.E.2d 237, paragraph three of the syllabus; Leber v. Buckeye Union Ins. Co. (1997), 125 Ohio App.3d 321,332. Thus, the plain and unambiguous language of the contract precludes the assignment of Symington's right to an uninsured/underinsured claim against Westfield without the written consent of that insurance company. Furthermore, the provisions of the uninsured motor vehicle policy excludes coverage for any claim settled without Westfield's consent. Finally, this section also contains a standard subrogation clause requiring the insured to transfer any right of recovery to Westfield upon Westfield's payment of an uninsured/underinsured motorist claim. As stated in a case decided by this court:
 "A subrogation clause is the insurer's method of protecting its rights. As noted in McDonald [v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27], an insured who settles with and releases an underinsured tortfeasor before giving her insurer notice is precluded from bringing an action against her insurer for underinsured motorist benefits. Id.
at 31. As stated in the McDonald case, "an insured who destroys his insurer's subrogation rights without the insurer's knowledge does so at his peril." Id.
The right of subrogation is a full and present right, independent of whether the use of such right will provide the insurer with a collection from the tortfeasor. Nickschinski v. Sentry Ins. Co. (1993), 88 Ohio App.3d 185, 623 N.E.2d 660. It is immaterial that there is little chance that the insurer would have been able to recover money from the tortfeasor or his insurance company. Id. at 190. Thus, regardless of the probable success of the use of its subrogation rights, the insurer can require its consent as a precondition to providing underinsurance benefits." (Emphasis added.) Decker v. Atlantic Mut. Ins. Co.
(May 9, 1997), Lucas App. No. L-96-028, unreported.
We are of the opinion that Symington's violation of the insurance contract by settling with Midwestern without Westfield's consent is akin to settlement with a tortfeasor without the injured party's notification to his or her insurer. Symington failed to notify and obtain Westfield's consent prior to settling its uninsured claim with Midwestern thereby depriving Westfield of any opportunity (the two year statute of limitations found in R.C. 2305.10 has lapsed) to recover any monies paid to Symington from the tortfeasor. Accordingly, Symington materially breached the insurance contract, and Westfield is not required to provide him with insurance coverage. Zinader v. Copley-Fairlawn City SchoolDist. (1994), 95 Ohio App.3d 623, 627-628; Colegrove v. Weyrick (May 6, 1998), Summit App. No. 18290, unreported; Decker v. Atlantic Mut. Ins.Co., supra. Consequently, the trial court did not err in granting Westfield's motion for summary judgment as a matter of law. Symington's sole assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Symington is ordered to pay the costs of this appeal.
 ____________________________ Melvin L. Resnick, J.
 James R. Sherck, J., George M. Glasser, J., JUDGES CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.